DEBRA HARRIS, Plaintiff-Appellant, v. NEWS-SUN, Defendant (Zion Police Department *et al.*, Defendants-Appellees).

Second District   No. 2—94—0479

Opinion filed January 30, 1995.

Neil L. Calanca, Leigh A. Dunham, and Robert N. Goshgarian, all of Waukegan, for appellant.

Peter M. Storm, of Law Offices of Cooper & Storm, of Geneva, for appellee News-Sun.

D. Kendall Griffith, Gary W. Klages, and Kristin E. Hutson, all of Hinshaw & Culbertson, of Chicago, for appellees City of Zion Police Department and Kevin Leslie.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Debra Harris, appeals the dismissal of her claims against the defendants, the Zion police department and Detective Kevin Leslie, pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). On appeal, the plaintiff contends that the court erred in dismissing the claims on the ground that Detective Leslie's statements were absolutely privileged. We affirm.

Counts I and II of the complaint alleged that the defendants and the News-Sun (News-Sun) libeled the plaintiff in an article quoting Detective Leslie's comments about the investigation and arrest of the plaintiff's husband for an alleged criminal sexual assault. Those counts further alleged that Detective Leslie was acting within the scope of his employment when he made the statements. Count III, for "emotional distress," alleged that the making and publishing of the statements were extreme and outrageous conduct. The court granted the News-Sun's motion to dismiss the claims against it, and the News-Sun is not a party to this appeal.

The complaint alleged that Detective Leslie told a reporter from the News-Sun the following false statements: that the plaintiff was "convicted in 1990 for her part in concealing [her husband's] illegal activities, [and] has remained 'totally uncooperative' on the present case against her husband"; and that "when [the plaintiff's husband] was taken into custody Friday at his home on the $500,000.00 warrant, police found 140 video tapes [sic] many of a pornographic nature."

The defendants moved to dismiss the complaint on the grounds that they were absolutely immune from civil liability sounding in libel and intentional infliction of emotional distress. The defendants attached to their motion the affidavit of Detective Leslie in which he averred that he is a detective for the Zion police department and

that his duties include the investigation of criminal activities occurring within Zion. Leslie averred further that he was assigned to investigate the allegations against the plaintiff's husband; that in the course of his duties he responded to the Lake County news media when inquiries about investigations were made; and that the statement attributed to him by the News-Sun was his official statement "acting as a detective for the Zion Illinois Police Department regarding the criminal investigation of the charges" made against the plaintiff's husband.

The plaintiff attached to her response to the motion a copy of the Zion police department's policy on media relations. The policy provides, in relevant part:

> "The media are important to the department because they portray the department to the public and because they can be of aid to the department in alerting the public to crime problems and in seeking the aid of the public. Therefore, this department will strive to maintain a good working relationship with members of the media."

To that end, police officers were directed to treat members of the news media courteously and professionally. The policy further stated that police officers could not reveal confidential information, nor were they allowed to discuss controversial matters or matters relating to the department's policies, philosophy, or enforcement procedures.

In reply, the defendants submitted the affidavit of Gordon D. Ohmstead, a lieutenant in the Zion police department. He averred that he was familiar with the media relations policy; the policy does not prevent a detective from discussing the facts of a particular investigation if that investigation does not involve "controversial questions" or "department policy"; the case involving the plaintiff's husband did not raise such "controversial questions" and did not involve departmental policy; and, pursuant to the police department's rules and regulations, a detective assigned to the investigation of a criminal matter is the police department's official spokesperson for that matter. The trial court agreed with the defendants that the absolute privilege barred the plaintiff's claims and dismissed the complaint with prejudice.

●1 The purpose of a section 2—619 motion is to provide a means to dispose of issues of law and easily proved issues of fact. (*Nikolic v. Seidenberg* (1993), 242 Ill. App. 3d 96, 98.) Our review of such a motion is limited to legal questions and is independent of the trial court's reasoning. (*Employers Mutual Cos. v. Skilling* (1994), 256 Ill. App. 3d 567, 569.) Under section 2—619(a)(9), an action may be dismissed on

the ground that a claim asserted is barred by other affirmative matter avoiding the legal effect or defeating the claim. (735 ILCS 5/2—619(a)(9) (West 1992).) "Affirmative matter" includes a defense that completely negates the asserted cause of action. (*Asher v. Farb Systems, Inc.* (1993), 256 Ill. App. 3d 792, 794.) In the context of a defamation action, the issue of absolute privilege is an affirmative defense which may by raised by and determined upon a section 2—619 motion. *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 875.

■ A trial court's dismissal of a complaint is proper where the affirmative matter "refutes crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific facts." (*Santa Claus Industries, Inc. v. First National Bank* (1991), 216 Ill. App. 3d 231, 236.) The affirmative matter must be more than evidence offered to refute a well-pleaded fact. (*Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 925.) However, if facts within an affidavit dispute the allegations of the complaint and are not contradicted via a counteraffidavit, the court must accept the facts in the affidavit as true. (*Landon v. Jarvis* (1993), 255 Ill. App. 3d 439, 446-47.) We note that, in the instant case, the plaintiff failed to submit any counteraffidavits. Therefore, we accept as true those facts set forth in Detective Leslie's and Lieutenant Ohmstead's affidavits.

■ Here, the defendants assert the absolute immunity or privilege accorded to government officials, rather than the absolute privilege attached to statements made as part of a judicial or quasi-judicial proceeding (see, *e.g., Muck v. Van Bibber* (1993), 251 Ill. App. 3d 240, 243). The absolute privilege doctrine originated as a defense against civil damages suits for defamation and "kindred torts." (*Barr v. Matteo* (1959), 360 U.S. 564, 569, 3 L. Ed. 2d 1434, 1440, 79 S. Ct. 1335, 1338.) In *Barr*, the Court held that the defendant, the acting director of the United States Office of Rent Stabilization, was immune from defamation liability for statements he made in a press release explaining why he suspended the plaintiffs from their employment. (*Barr*, 360 U.S. at 574-75, 3 L. Ed. 2d at 1443, 79 S. Ct. at 1341.) Our supreme court recognized this doctrine in *Blair v. Walker* (1976), 64 Ill. 2d 1, and held that the Governor of Illinois was immune from liability for making statements "which are legitimately related to matters committed to his responsibility." (*Blair*, 64 Ill. 2d at 10.) The justification for the privilege is the need to ensure that government officials are

> "free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of

which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." (*Barr*, 360 U.S. at 571, 3 L. Ed. 2d at 1441, 79 S. Ct. at 1339.)

Contrary to the plaintiff's assertions, "[a]n absolute privilege cannot be overcome by a showing of improper motivation or knowledge of [the statement's] falsity [citation], *i.e.*, made with malice." *Geick*, 236 Ill. App. 3d at 875.

The first issue here is whether Detective Leslie's duties fall within the scope of the absolute privilege. Courts have found a wide range of lower-level executive officials, including police department administrators, enjoy absolute immunity from civil liability. (See, *e.g.*, *Dolatowski v. Life Printing & Publishing Co.* (1990), 197 Ill. App. 3d 23 (deputy police superintendent); *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417 (division chief in the Attorney General's office).) In *Dolatowski*, for example, the deputy police superintendent, whose duties included "communicating, on behalf of the department, with the public and the press with respect to [the] Department's efforts" concerning anti-vice operations which he oversaw, was held to be protected by the privilege. *Dolatowski*, 197 Ill. App. 3d at 29.

■ The plaintiff argues that because the defendant in *Dolatowski* outranked Detective Leslie, the duties, obligations, and responsibilities of the two positions must differ. The plaintiff's focus on rank, however, is misplaced. The term "government official" has been broadly construed for purposes of absolute immunity under *Barr*. As the Court in *Barr* explained:

"The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.

*** It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted *** which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits." (*Barr*, 360 U.S. at 572-74, 3 L. Ed. 2d at 1442-43, 79 S. Ct. at 1340-41.)

Thus, the proper focus of the absolute immunity inquiry is on the nature of the government official's duties, and not on his/her rank or title.

■ We find that Detective Leslie's duties place him squarely within the holding of *Dolatowski*. According to the uncontroverted

affidavits, Detective Leslie's duties included speaking with the media about investigations in which he was involved. Like the deputy police superintendent in *Dolatowski*, Leslie made statements on behalf of the department, as its official spokesperson. (See *Dolatowski*, 197 Ill. App. 3d at 29.) Accordingly, we conclude that as an official police spokesperson communicating with the press regarding an investigation, Detective Leslie was an official cloaked with immunity for statements made within the scope of his official duties.

The plaintiff further contends in her brief that the absolute privilege is inapplicable because, contrary to the allegation in the plaintiff's complaint, Detective Leslie's statements were not made within the scope of his official duties. This contention is similarly without merit. According to the affidavits, Leslie was the detective in charge of investigating the plaintiff's husband, and the statements made were related to that investigation. Further, Leslie made the statements to a member of the Lake County news media, and, under the police department's media relations policy, the detective in charge of an investigation acts as the department's official spokesperson regarding that investigation. Leslie's statements did not relate to departmental policy, nor did they involve a "controversial question" within the meaning of the department's media relations policy. Accordingly, we find that Detective Leslie's statements were made within the scope of his duties as the official police spokesperson for the investigation of the plaintiff's husband's case and were therefore privileged. See *Dolatowski*, 197 Ill. App. 3d at 29.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and RATHJE, JJ., concur.