BRUCE P. GOLDEN, Plaintiff-Appellant, v. TERENCE C. MULLEN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—96—2931

Opinion filed August 22, 1997.—Rehearing denied April 21, 1998.—Modified opinion filed May 1, 1998.

Edward A. Berman, P.C., of Chicago, for appellant.

Michael Weininger and Lawrence M. Karlin, both of Katz, Randall & Weinberg, of Chicago, for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiff, Bruce P. Golden (Golden), appeals the dismissal of his defamation action against Terence C. Mullen (Mullen) and the law firm of Mullen & Winthers, P.C. (firm). The principle issue on appeal is whether the circuit court erred by extending the absolute privilege that attaches to defamatory statements of attorneys made in the course of judicial proceedings to postlitigation statements made to the client. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

Golden and Mullen are Illinois attorneys. The complaint[1] alleges that in 1994 and 1995 Mullen and his firm represented Charles W. Sullivan (Sullivan) in litigation against William E. Switzer (Switzer) in Cook and Du Page Counties, such representation allegedly "end-[ing]" on June 23, 1995, and October 13, 1995, respectively. Switzer was represented by Golden.

On November 14, 1995, Mullen wrote a letter to Sullivan and his wife on firm stationery which states in relevant part:

"Thank you for your letter of October 20, 1995. Although I am in agreement with your suggestion to just walk away from a bad situation there are three things I want you to know:

1) The attorney representing Mr. Switzer is a *raving lunatic*. I have been told by every attorney who has worked on this file that they have never met such a *deranged lawyer*. One even suggested that this lawyer was *legally incompetent*. When I said I was in over my head on this case, that's what I was referring to. A law firm our size is just not equipped to deal with constant legal abuse inflicted by a *rougue* [sic] attorney." (Emphasis added.)

On January 17, 1996, Mullen wrote another letter, addressed only to Sullivan, which states:

"The last time you wrote to me, you expressed your frustrations over this case. You asked me to reduce your bill of around $1,900.00 to zero balance. I sympathised [sic] with your frustrations, and I still do. However, it is wrong to now threaten me with a malpractice lawsuit unless I pay to you the $5,900.00 you paid to our law firm during this case as a refund. Not only did we not commit any malpractice, we paid $5,000.00 out of our own pockets to defend us in the Federal lawsuit that Switzer's *crazy lawyer* filed. I'm sorry Chuck, I really am, but I'm not responsible for the destruction of your business or the other things stated in your letter." (Emphasis added.)

Plaintiff alleges that the statements were false and that Mullen knew they were false or had no reasonable basis for believing the statements to be true or that the statements were made in reckless disregard of whether they were true or false. Golden sought special and/or presumed damages under theories of defamation *per se* (count I) and defamation *per quod* (count II), and punitive damages for willful, wanton and reckless conduct (count III).

Mullen filed a combined motion to dismiss under sections 2—615(a) and 2—619(a)(9) of the Code of Civil Procedure (Code) (735

---

[1]The "complaint" actually consists of the "Complaint at Law" (filed February 13, 1996) and the one-page "Amendment to Complaint" (filed March 21, 1996), which restated paragraph 15.

ILCS 5/2—615(a), 2—619(a)(9) (West 1996)). In his section 2—615 motion, Mullen asserted that while the statements in his letters may have been disparaging, they do not constitute actionable libel; that the statements are nonactionable expressions of opinion; and that, even if defamatory, the statements do not fall within any of the recognized categories of defamation *per se*.

In his section 2—619 motion, Mullen contended that the letters were written in connection with recently concluded, pending or contemplated judicial proceedings and thus were absolutely privileged; that, alternatively, the letters were conditionally privileged; and that Golden had not pleaded and could not prove special damages. Mullen's section 2—619 motion was supported by his own affidavit detailing the history of his representation of Sullivan in the Du Page County litigation, Golden's extensive motion practice in the course of the litigation, Mullen's knowledge of related litigation in Cook County, and his involvement as a codefendant in related federal litigation brought by Switzer against Sullivan.

Attached to Mullen's affidavit were, among other things, copies of two letters Sullivan wrote to Mullen. The first, dated October 20, 1995, was apparently written after receiving Mullen's invoice for legal services. Sullivan expressed his frustration and anger over the American legal system, attorneys in general, and Mullen's handling of the litigation. Sullivan also raised the specter of a malpractice suit against Mullen and suggested that Mullen clear his account and consider it closed. The second letter, dated January 10, 1996, was written in response to Mullen's letter of November 14, 1995. Sullivan again raised the possibility of a malpractice claim against Mullen and the firm and requested return of approximately $6,000 in legal fees paid to Mullen. Mullen responded with his January 17, 1996, letter.

In response to Mullen's section 2—615 motion, Golden asserted that Mullen's statements are not capable of an innocent construction; that imputing insanity is defamatory *per se*; and that Mullen's statements do not qualify as nonactionable expressions of opinion.

As to Mullen's section 2—619 motion, Golden argued that Mullen's statements were made to protect his own economic interests and thus do not constitute the type of communication covered by the absolute privilege; that the occasion under which the statements were made did not trigger application of a conditional privilege; and that even assuming a conditional privilege applied, Mullen abused the privilege by failing to investigate the truth of the statements. Golden's response was supported by portions of the deposition testimony of David Axelrod, who represented Sullivan in the federal

suit, by his own affidavit detailing the litigation, and by affidavits from Switzer and two other satisfied clients.

The circuit court dismissed the complaint with prejudice pursuant to Mullen's section 2—619 motion, finding that the absolute privilege of attorneys to make defamatory remarks related to judicial proceedings also applies to posttrial remarks made to a client. The court also held that, as a matter of law, Mullen's statements were conditionally privileged and that Mullen had not abused the privilege.

Golden filed a motion to reconsider in which he generally reargued his position and, for the first time, asserted that any privilege cannot extend to Mrs. Sullivan, to whom Mullen's first letter was also addressed. The circuit court denied this motion, as well as Golden's subsequent motions for leave to file a "First Amended Complaint" and an "Amendment to the First Amended Complaint." This appeal followed. 155 Ill. 2d R. 301.

## ANALYSIS

■■ Section 2—619(a)(9) of the Code provides for involuntary dismissal of a cause of action where the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 1996). "Affirmative matter" is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Fancher v. Central Illinois Public Service Co.*, 279 Ill. App. 3d 530, 534, 664 N.E.2d 692 (1996). In a defamation action, the issue of absolute privilege is an affirmative defense that may be raised and determined in a section 2—619 motion. *Harris v. News-Sun*, 269 Ill. App. 3d 648, 651, 646 N.E.2d 8 (1995). This court reviews the grant of a motion to dismiss under section 2—619 on a *de novo* basis. *Corluka v. Bridgford Foods of Illinois, Inc.*, 284 Ill. App. 3d 190, 192, 671 N.E.2d 814 (1996). The question on appeal is whether there exists a genuine issue of material fact precluding dismissal or, absent an issue of material fact, whether dismissal is proper as a matter of law. *Corluka*, 284 Ill. App. 3d at 192.

Golden does not claim that an issue of material fact precludes dismissal. Rather, he argues that the circuit court erred by extending the absolute privilege to Mullen's postlitigation statements. Whether a statement is privileged is a question of law. *Barakat v. Matz*, 271 Ill. App. 3d 662, 667, 648 N.E.2d 1033 (1995).

■ The defense of absolute privilege in a defamation action involving statements made by an attorney is set forth in the Restatement (Second) of Torts § 586 (1977) (Restatement) and provides as follows:

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

The privilege extends to out-of-court communications between opposing counsel (*Dean v. Kirkland*, 301 Ill. App. 495, 23 N.E.2d 180 (1939)), to out-of-court communications between attorney and client related to pending litigation (*Weiler v. Stern*, 67 Ill. App. 3d 179, 384 N.E.2d 762 (1978)), to out-of-court communications between attorneys representing different parties suing the same entities (*Libco Corp. v. Adams*, 100 Ill. App. 3d 314, 426 N.E.2d 1130 (1981)), to statements made during quasi-judicial proceedings (*Richardson v. Dunbar*, 95 Ill. App. 3d 254, 419 N.E.2d 1205 (1981)), and to communications necessarily preliminary to a quasi-judicial proceeding (*Parrillo, Weiss & Moss v. Cashion*, 181 Ill. App. 3d 920, 537 N.E.2d 851 (1989)).

The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter. Restatement (Second) of Torts § 586, Comment *a*, at 247 (1977); *Weber v. Cueto*, 209 Ill. App. 3d 936, 942, 568 N.E.2d 513 (1991). The only requirement is that the communication pertain to proposed or pending litigation. The pertinency requirement is not applied strictly, and the privilege will attach even where the defamatory communication is not confined to specific issues related to the litigation. *Libco Corp. v. Adams*, 100 Ill. App. 3d at 317. All doubts should be resolved in favor of a finding of pertinency (*Skopp v. First Federal Savings*, 189 Ill. App. 3d 440, 447-48, 545 N.E.2d 356 (1989)), which is a question of law for the court (*Macie v. Clark Equipment Co.*, 8 Ill. App. 3d 613, 615, 290 N.E.2d 912 (1972)). If, however, the defamatory statements have "no connection whatever with the litigation," then no privilege will attach. Restatement (Second) of Torts § 586, Comment *c*, at 248 (1977).

The privilege is predicated on the tenet that although defendant's conduct is otherwise actionable, because he is acting in furtherance of some interest of social importance, the communication is protected and no liability will attach, even at the expense of uncompensated harm to the plaintiff's reputation. *Weber v. Cueto*, 209 Ill. App. 3d at 942; *Libco Corp. v. Adams*, 100 Ill. App. 3d at 317. We believe that the same public policy considerations that protect an attorney's statements made to his or her client during the course of a legal proceeding necessarily protect postlitigation communications of the type at issue here.

An attorney must be free to discuss with the client the outcome

of the litigation, future strategies, if any, and generally respond to inquiries from the client without fear of civil liability. Indeed, it is incumbent upon an attorney, following the conclusion of a legal proceeding or some portion thereof, to explain fully to the client what has occurred, why it has occurred, and the ramifications. Such explanation may require an assessment of the conduct of opposing counsel, other parties to the litigation, witnesses, and even the court. We believe, as the circuit court did, that there is a "tremendous public interest" in protecting and facilitating this type of open communication and commentary. Accordingly, we hold that the absolute privilege that attaches to defamatory statements made by an attorney incidental to a pending legal proceeding also applies to postlitigation defamatory statements made by an attorney to the client he or she represented in such proceeding.

In the case at bar, the communication was actually initiated by the client following his receipt of Mullen's invoice for legal services and followed close on the heels of the dismissal of the Du Page County litigation. Mullen's first letter, in fact, was written just one month after entry of the dismissal order. The subject matter of the letters between Sullivan and Mullen was pertinent to the litigation just concluded, as well as the then-pending federal court case between Switzer and Sullivan. Sullivan raised several issues relative to Mullen's handling of the case, as well as Mullen's billing practices. Clearly, Mullen was under a duty to respond to Sullivan's concerns with diligence and candor. Under the circumstances, we find that Mullen's statements to Sullivan in both the November 14, 1995, and January 17, 1996, letters were absolutely privileged.

In reaching our decision, we have reviewed case law from other jurisdictions that have considered the applicability of the absolute privilege to extrajudicial statements and find *Cummings v. Kirby*, 216 Neb. 314, 343 N.W.2d 747 (1984), of note. In *Cummings*, the Supreme Court of Nebraska considered whether statements made by an attorney to his client during a postverdict meeting were privileged. The purpose of the meeting was to discuss the attorney's handling of the case, problems at trial, and disagreements among the attorney, his client, and the client's son. Apparently suggesting a reason for the unfavorable outcome at trial, the attorney stated that everyone in the county thought the client's son was a "crook." The court applied the absolute privilege to defeat the son's defamation action. The court stated that the reasoning set forth in the Restatement for application of the privilege "extends to communications after a trial which are pertinent to the attorney-client discussions in explaining what has occurred and what further action is possible." *Cummings*, 216 Neb. at 316-17, 343 N.W.2d at 749.

Golden argues that, unlike the defendant attorney in *Cummings*, Mullen had been discharged by Sullivan prior to Mullen's two allegedly defamatory letters. Even if true, the privilege nonetheless applies. Contrary to Golden's claim, we do not view Mullen's letters as merely an attempt to avoid a malpractice action but, rather, a legitimate extension of Mullen's obligation to Sullivan as his attorney in the Du Page County proceeding to explain what had occurred and the reasons therefor. We note also that the pertinency requirement is not strict and that Mullen's letters satisfy this requirement. See *Libco Corp. v. Adams*, 100 Ill. App. 3d at 317.

As to Mullen's November 14, 1995, letter, which was also addressed to Mrs. Sullivan, to the extent publication to Mrs. Sullivan actually occurred, we agree with Golden that no privilege applies. Since the privilege affords complete immunity, classification of absolutely privileged communications is necessarily narrow. *Barakat v. Matz*, 271 Ill. App. 3d at 667. We are reluctant to expand the privilege to cover communications made by an attorney to persons other than the clients he or she represented in recently concluded litigation. We do not believe that the confidential nature of the relationship between husband and wife provides an adequate basis for extending the privilege and find no other basis in the law for doing so. Although at least one other jurisdiction has extended the privilege in certain circumstances to cover an attorney's communications to persons other than the client, we decline to do so here. See *Kanengiser v. Kanengiser*, 248 N.J. Super. 318, 590 A.2d 1223 (1991); *DeVivo v. Ascher*, 228 N.J. Super. 453, 550 A.2d 163 (1988). Accordingly, it was error for the trial court to dismiss the complaint as to Mullen's defamatory statements that were allegedly published to Mrs. Sullivan in his letter of November 14, 1995.

■ Finally, we reject Golden's contention on appeal that the circuit court erred by denying his motion to amend the complaint. Following dismissal of his complaint with prejudice, and the denial of his motion for reconsideration, Golden moved to amend his complaint, pursuant to sections 2—616(a) and (c) (735 ILCS 5/2—616(a), (c) (West 1996)). Golden sought to add additional allegations to the defamation counts, as well as a new count for false light. Defendants maintain that plaintiff's motion to amend was not timely and that the proposed amendment would not cure the pleading deficits.

Even assuming Golden's motion to amend was properly before the court, denial was nonetheless appropriate. With respect to the defamation counts, no amendment could cure the defect in the plaintiff's complaint. As to the claim for false light, plaintiff alleges no new facts, but merely concludes that the same publication of the

same statements that are the predicate of plaintiff's defamation claim also placed Golden in a false light. Given the limited publication at issue here, plaintiff cannot plead a claim for false light. See *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 17-18, 607 N.E.2d 201 (1992) (setting forth the elements for claim of false light); 1 M. Polelle & B. Ottley, Illinois Tort Law § 6.11, at 6—19.1 (2d ed. 1997) (comparing defamation and false light). Thus, the circuit court properly denied plaintiff's motion to amend.

For the foregoing reasons, we affirm the decision of the circuit court dismissing the complaint as it relates to statements published to Sullivan, reverse the dismissal as it relates to statements allegedly published to Mrs. Sullivan, and remand this cause for further proceedings consistent with this ruling.

Affirmed in part and reversed in part; cause remanded.

HOFFMAN, P.J., and SOUTH, J., concur.