15 May 2000

No. 2--99--0695

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

JOHN J. POPP, JR., )  Appeal from the Circuit Court

)  of Kane County.

Plaintiff-Appellant, )

)

v. )  No. 96--L--458  

)

TIMOTHY D. O’NEIL, WILLIAM C. )

MURPHY, ROBERT B. HUPP, ROBERT )

M. FOOTE, CRAIG S. MIELKE, )

PATRICK M. KINNALLY, PAUL G. )

KRENTZ, JOSEPH C. LORAN, and )

GERALD K. HODGE, Indiv. and )

d/b/a Partners of the Law )

Firm of Murphy, Hupp, Foote, )

Mielke, and Kinnally, ) Honorable

) Timothy Q. Sheldon,

Defendants-Appellees. ) Judge, Presiding.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, John Popp, Jr., appeals from the May 20, 1999, order of the circuit court of Kane County dismissing his complaint with prejudice pursuant to section 2--619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619(a)(9) (West 1998)).  The plaintiff brought the instant action seeking to recover damages for allegedly libelous statements contained in a letter written by the defendant, Timothy O’Neil, who was an associate with the law firm of Murphy, Hupp, Foote, Mielke, & Kinnally (the Murphy firm).  In dismissing the plaintiff's complaint, the trial court found that the content of the letter was absolutely privileged and could not form the basis of a libel action.  We affirm.

The following facts are taken from the plaintiff’s complaint.  On November 29, 1995, Timothy O’Neil sent a letter to Michael Fleming on the letterhead of the Murphy firm.  At this time, Fleming was allegedly a business associate of the plaintiff.  The purpose of the correspondence was to advise Fleming that the Murphy firm would not be representing him in a potential personal injury claim.  Among the stated reasons for this decision was the following:

"Further compounding the problem, one of the witnesses is John Popp of Aurora.  If this firm were to undertake representing you, John Popp would hurt you tremendously because of our representation.  We have just finished legal proceedings against Popp and his company in which we have won a substantial judgment.  Popp lied on the stand in that case, and because he hates this firm, would not do you any favors.

For the reasons above, we will decline to represent you in this case.  However, that does not mean that another attorney would have the same view of the case or have the problem with John Popp."

This letter was mailed to Fleming’s residence.  The letter was apparently opened by Fleming’s wife and its contents were read by both Fleming and his wife.

On October 1, 1996, the plaintiff filed a complaint against O'Neil and each of the partners of the Murphy firm.  The plaintiff alleged that the statements in the letter were libelous 
per
 
se
, as they falsely and maliciously accused him of committing the offense of perjury.  The plaintiff alleged that the letter was read by Fleming, his wife, and "numerous other people and business associates."

On December 9, 1996, the defendants moved to dismiss the plaintiff’s complaint pursuant to section 2--619(a)(9) of the Code (735 ILCS 5/2--619(a)(9) (West 1996)).  The defendants argued that the plaintiff’s complaint was barred by the affirmative defense of truth.  Specifically, the defendants argued that O’Neil’s statement that "Popp lied on the stand" was true.  On April 1, 1997, following a hearing, the trial court granted the defendants’ motion and dismissed the plaintiff’s complaint with prejudice.  The plaintiff filed an appeal and this court reversed the dismissal, finding that genuine issues of material fact existed as to whether the plaintiff had actually lied on the stand.  See 
Popp v. O'Neil
, No. 2--97--0696 (1998) (unpublished order under Supreme Court Rule 23).

On remand, the defendants again moved to dismiss the complaint pursuant to section 2-619(a)(9) of the Code.  In the motion, the defendants argued that O'Neil's letter was absolutely privileged and could not form the basis of a libel action.  The defendants argued that the letter was a privileged communication between an attorney and a potential client preliminary to a proposed judicial proceeding.

In support of the motion, the defendants attached the affidavit of O'Neil.  In his affidavit, O'Neil stated that, prior to November 29, 1995, he had consulted with Fleming about the possibility of representing Fleming in a civil action arising out of a bar fight that had occurred between Fleming and Michael Prate.  After speaking with Fleming, O'Neil obtained a copy of the police report concerning the fight.  The report identified the plaintiff as a possible witness.  Thereafter, O'Neil prepared and sent to Fleming the allegedly defamatory letter.

In response to the motion to dismiss, the plaintiff submitted the affidavits of Fleming and his wife, Ginger Fleming.  In his affidavit, Fleming stated that he had left a telephone message with the defendants' law firm sometime during the first two weeks of November 1995 concerning injuries that he had sustained in a bar fight.  In the third week of November 1995, Fleming received a telephone call from O'Neil, who asked him to identify any witnesses  to the injury.  After Fleming advised O'Neil that the plaintiff had been with Fleming at the time of the fight, O'Neil told Fleming that he did not want to be associated with the plaintiff and that neither he nor the Murphy law firm would be able to take Fleming's case.  Fleming indicated in his affidavit that he never had an opportunity to ask O'Neil to represent him, nor did he ever consider himself to be a client of O'Neil or the Murphy firm.  Several days after this telephone conversation, Fleming received O'Neil's letter.

In her affidavit, Ginger Fleming stated that she had never been a client of the Murphy firm.  She further stated that, on or about November 29, 1995, she opened and read a letter that had been addressed to her husband and that had been written by O'Neil.  Ginger Fleming stated that she knew the plaintiff and that, prior to reading O'Neil's letter, had always thought highly of his character and honesty.

On May 20, 1999, following a hearing, the trial court granted the defendants' motion for summary judgment.  The trial court found that O'Neil's communication to Fleming was pertinent to Fleming's proposed litigation and was therefore absolutely privileged.  The trial court therefore concluded that the letter could not serve as the basis for the plaintiff's claim of libel.  The plaintiff filed a timely notice of appeal.

The plaintiff’s sole contention on appeal is that the trial court erred in finding that O'Neil's letter was absolutely privileged.  The plaintiff argues that, at the time that O'Neil wrote the letter, Fleming was not a potential client.  Rather, the plaintiff argues that O'Neil had already verbally rejected representation of Fleming prior to publishing the letter.  The plaintiff therefore contends that, at the time the letter was written, the defendants were not engaged in the representation of a "client."  Alternatively, the plaintiff argues that, even if such a privilege was applicable, it cannot extend to communications that were published to Fleming's wife.  Finally, the plaintiff argues that the legislature's enactment of the Slander and Libel Act (740 ILCS 145/1 
et
 
seq.
 (West 1998)) displaced the common law privilege relied upon by the defendants.

A section 2--619 motion may be used to dispose of issues of law or easily proved issues of fact.  
Neade v. Engel
, 277 Ill. App. 3d 1004, 1007 (1996).  The motion may be granted when the claim asserted is barred by some affirmative matter defeating the claim.  735 ILCS 5/2--619(a)(9) (West 1998).  The trial court should grant a section 2--619 motion if, after construing the documents in the light most favorable to the nonmovant, it finds no disputed issues of fact.  
Draper v. Frontier Insurance Co.
, 265 Ill. App. 3d 739, 742 (1994).  In a defamation action, the issue of absolute privilege is an affirmative defense that may be raised and determined by a section 2-619 motion to dismiss.  
Harris v. News-

Sun
, 269 Ill. App. 3d 648, 651 (1995).  Whether a particular statement is privileged is a question of law.  
Barakat v. Matz
, 271 Ill. App. 3d 662, 667 (1995).

Under certain circumstances, an attorney is absolutely privileged to make defamatory statements.  The scope of the privilege is set forth in the Restatement (Second) of Torts §586 (1977) (Restatement), which provides:

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

The privilege extends to out-of-court communications between attorney and client. 
Golden v. Mullen
, 295 Ill. App. 3d 865, 870 (1997).  The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter.  
Golden
, 295 Ill. App. 3d at 870.  The only requirement is that the communication pertain to proposed or pending litigation.  
Golden
, 295 Ill. App. 3d at 870.  The pertinency requirement is not applied strictly, and the privilege will attach even where the defamatory communication is not confined to specific issues related to the litigation.  
Libco Corp. v. Adams
, 100 Ill. App. 3d 314, 317 (1981).  All doubts should be resolved in favor of a finding of pertinency.  
Skopp v. First Federal Savings
, 189 Ill. App. 3d 440, 448 (1989).

Our research has uncovered no case considering whether the absolute privilege extends to defamatory statements made by an attorney to a potential client during a preliminary legal consultation.  Rather, all of the reported cases involve defamatory statements made after a legal proceeding had already been initiated.  We therefore must consider whether the same public policy considerations that protect an attorney's statements made to his or her client during the course of a legal proceeding may also be applied to protect an attorney's statements to a potential client during preliminary legal consultations.  See 
Golden
, 295 Ill. App. 3d at 870 (looking to public policy to determine whether the absolute privilege should be applied to postlitigation communications).

The general public policy underlying the absolute privilege is the need for an attorney to be able to speak his mind fully and fearlessly when communicating with his client.  
Weiler v. Stern
, 67 Ill. App. 3d 179, 183 (1978).  Such an open and honest exchange is necessary for the client to assess the circumstances at hand and to determine the appropriate course of action.  
Golden
, 295 Ill. App. 3d at 870-71.  Illinois courts have found that there is a "tremendous public interest" in protecting and facilitating this type of open communication and commentary.  
Golden
, 295 Ill. App. 3d at 871.

We agree with the defendants that the need for open and full communication is equally compelling during the preliminary legal consultations between an attorney and a potential client.  The purpose of such consultations is to permit an individual to seek counsel from a professional legal advisor concerning a matter of concern to the individual.  The need for full and frank consultation is essential in order for both the individual and the attorney to determine the potential courses of action and the desirability of creating an ongoing attorney-client relationship.

Indeed, we note that the traditional attorney-client privilege already protects confidential communications made by an individual to an attorney during a preliminary legal consultation.  See 
Herbes v. Graham
, 180 Ill. App. 3d 692, 699 (1989).  The traditional attorney-client privilege applies whenever an individual seeks legal advice of any kind from a professional legal advisor in his capacity as such and the communications are made in confidence for such a purpose.  
People v. Williams
, 97 Ill. 2d 252, 294 (1983).  In construing the traditional attorney-client privilege, courts have noted the need to encourage and promote full and frank consultation between an individual and a legal advisor. 
In re Marriage of Johnson
, 237 Ill. App. 3d 381, 392 (1992)
.

We believe that similar considerations mandate the protection of an attorney's defamatory statements to a potential client during  a preliminary legal consultation as long as the statements are pertinent to a possible future legal proceeding.  See 
Golden
, 295 Ill. App. 3d at 870.  Even during an initial consultation, the attorney must be able to open and honestly discuss the potential client's situation in order to determine the desirability of initiating legal proceedings.  We note that such a conclusion is in harmony with the commentary to section 586 of the Restatement which indicates that the absolute privilege to publish defamatory matter extends to "conferences and other communications preliminary to the proceeding."  Restatement (Second) of Torts §586, Comment 
a
, at 247 (1977).

We therefore hold that the absolute privilege extended to the letter at issue in the instant case.  The content of the letter was pertinent to Fleming's potential lawsuit as it discussed O'Neil's inability to handle the case due to prior conflicts with the plaintiff.  We also believe that the letter was privileged even though it was published after O'Neil had already verbally informed Fleming that the defendants would not undertake legal representation.  The letter was intended to memorialize this conversation and to provide Fleming with additional advice with respect to his personal injury action, including his likelihood of success.  We believe that Fleming was entitled to know the defendants' precise reasons for declining representation in order to determine his next course of action.  We therefore conclude that the letter "furthered an interest of social importance" and that the absolute privilege applies.  See 
Libco Corp.
, 100 Ill. App. 3d at 317.

We also reject the plaintiff's contention that the absolute privilege does not apply because the letter was read by Fleming's wife.  Although it is true that an attorney is not privileged to make defamatory statements to persons other than the clients that he represents (
Golden
, 295 Ill. App. 3d at 872), there is no evidence that O'Neil made the allegedly defamatory comments to Fleming's wife.  The letter was addressed only to Fleming, not Fleming's wife.  We disagree with the plaintiff's assertion that the privilege is defeated merely because Fleming's wife intercepted and read Fleming's mail.

As his final contention, the plaintiff argues that the Slander and Libel Act (740 ILCS 145/1 
et
 
seq.
 (West 1998)) precludes application of an absolute privilege in the instant case.  Section 2 of that act provides:

"It shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely, or for using, uttering or publishing words of, to or concerning any person, which, in their common acceptation, amount to such charge, whether the words be spoken in conversation of, and concerning a judicial proceeding or not."  740 ILCS 145/2 (West 1998).

The plaintiff asserts that this statutory language indicates that the legislature intended charges of false swearing to be actionable under any circumstances.  The plaintiff argues that the language of the statute "negates" the absolute privilege that the trial court applied here.

Such an argument is without merit.  Since the enactment of the Slander and Libel Act in 1874, Illinois courts have consistently held that no action may be maintained upon any verbal or written statement made by an attorney during a legal proceeding that is pertinent to the matter in controversy.  See 
McDavitt v. Boyer
, 169 Ill. 475, 483 (1897); 
Dean v. Kirkland
, 301 Ill. App. 495, 509-10 (1939).  We are unaware of any authority holding that the Slander and Libel Act eradicates the absolute privilege afforded attorneys to publish defamatory statements.  Nor do we believe that the statutory language contained in section 2 contemplates such a result.  Rather, for the reasons articulated above, we hold that the statements contained in O'Neil's letter were absolutely privileged and that the trial court properly dismissed the plaintiff's complaint pursuant to section 2-619(a)(9) of the Code.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and COLWELL, JJ., concur.