2022 IL App (1st) 210319-U
No. 1-21-0319
Order filed April 25, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | |
|---|---|
| ANTHONY SCULLY, as Successor Trustee of the NICHOLAS J. VENTRELLA REVOCABLE TRUST and JOSEPH A. VENTRELLA, as beneficiary of and derivatively on behalf of the NICHOLAS J. VENTRELLA REVOCABLE TRUST, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> NOVACK AND MACEY LLP, an Illinois Limited Liability Partnership, JOHN B. HAARLOW, JR., individually, MONTE L. MANN, individually, STEPHEN NOVACK, individually, JAMES B. VENTRELLA, individually and as Manager of PROPERTY DYNAMICS, LLC, JOSEPH C. SANTUCCI, individually and as Manager of PROPERTY DYNAMICS LLC, and PROPERTY DYNAMICS LLC, an Illinois Series Limited Liability Company, <br><br> Defendants-Appellees. | Appeal from the Circuit Court of Cook County. <br><br> No. 20 L 10188 <br><br> Honorable Margaret Ann Brennan, Judge, presiding. |

---

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court order dismissing complaint affirmed, as litigation privileges bar claim.

¶ 2    This case constitutes the latest in a long series of disputes arising from real estate and assets that Dorothy and Nicholas Santucci bequeathed to their grandchildren. In an unsuccessful effort to avoid disagreements over the estates, the grandchildren created a family settlement agreement and conveyed the real estate to Property Dynamics, LLC. The seven grandchildren each owned an equal interest. Joseph Ventrella and James Santucci served as co-managers. The LLC members eventually removed Joseph Ventrella as a co-manager for engaging in conduct detrimental to the company. Since then, he has tried to reverse the conveyances to Property Dynamics and return them to his grandmother's estate.

¶ 3    After Joseph Ventrella filed the *lis pendens* notices on properties conveyed to Property Dynamics, his brother, James Ventrella, and his cousin, Joseph Santucci, placed a *lis pendens* notice on a Northfield residence, which their grandparents purchased in 1965. Title was held in the grandparent's land trust until 2011 then conveyed to Nicholas Ventrella, and ultimately to the Nicholas J. Ventrella Trust. James Ventrella and Joseph Santucci filed the *lis pendens* purportedly because they believed the Northfield residence might be subject to rescission if Joseph Ventrella succeeded in unwinding the conveyances to Property Dynamics.

¶ 4    Nicholas Ventrella lived at the Northfield residence until he became sick and placed the house up for sale. After he died in 2016, Joseph Ventrella, as successor trustee of the Nicholas Trust, sold the home. As trustee he filed this case against James Ventrella and Joseph Santucci, individually, and as managers of Property Dynamics, their attorneys, and the LLC, alleging slander of title and abuse of process. He claimed that because of the *lis pendens* notice, the home sold for less than market value. He sought over $1 million in damages. (Anthony Scully later replaced Joseph Ventrella as successor trustee of the Nicholas Trust and became the named appellant. For clarity, the appellant will be referred to as "Trustee.")

¶ 5 The trial court dismissed the complaint with prejudice, finding that *res judicata* barred the slander of title claim because it arose out of the same set of operative facts of a case in which a court had entered final judgment, and the Trustee could have raised it there. The court also found the abuse of process claim barred by the two-year statute of limitations.

¶ 6 On the slander of title claim, the Trustee contends the requirements of *res judicata* have not been satisfied and asks us to reverse. As to the abuse of process claim, we find it waived by the Trustee's failure to address it in his brief.

¶ 7 While we hold that *res judicata* does not preclude the slander of title claim, we affirm on the basis that litigation privileges bar the claim.

¶ 8                                      Background

¶ 9 Dorothy and Nicholas Santucci ("grandparents") had two daughters, Elsie Santucci and Berenice Ventrella. Nicholas Santucci died in 1968, leaving to Dorothy the real estate holdings, which she held in the Dorothy M. Santucci Estate Trust (Dorothy Trust). Elsie had three children, Joseph, Dorothy, and Nicholas Santucci. Berenice had four sons, Nicholas, Joseph, James, and Paul Ventrella. (Collectively, "the grandchildren.") Dorothy died in 1987. Her estate plan provided that the Dorothy Trust be divided into three parts, with Berenice being the beneficiary of two-thirds and the grandchildren the beneficiary of one-third. (The grandparents disinherited their daughter, Elsie Santucci.) Berenice died, and her will was admitted to probate in *In re Estate of Berenice Ventrella,* No. 08 P 811 (the "probate case"). The probate court appointed her son, Joseph Ventrella, the executor.

¶ 10 To resolve disputes over the assets of the Dorothy Trust, the seven grandchildren entered into a Family Settlement Agreement ("FSA"). The FSA appointed Joseph Ventrella as trustee of the Dorothy Trust and Joseph Santucci as the administrator of Dorothy's estate. The grandchildren

then formed Property Dynamics, LLC, to receive "all assets originating in any way, whether by title or funding, from the Estates of [the grandparents] and any trusts or other entities controlled or created by them." The grandchildren had an equal 1/7 membership interest in Property Dynamics and named Joseph Ventrella and Joseph Santucci as co-managers.

¶ 11 The grandchildren transferred nearly all of the properties held by the Dorothy Trust to Property Dynamics but distributed a few non-income properties equitably amongst themselves, including a home in Northfield ("Northfield residence"). The grandparents purchased the home in 1965 and put it in a land trust. In 2011, the land trust conveyed the Northfield residence to Nicholas Ventrella, who conveyed it to the Nicholas J. Ventrella Trust (Nicholas Trust)in 2014.

¶ 12 In October 2014, the grandchildren removed Joseph Ventrella as co-manager of Property Dynamics for allegedly engaging in conduct detrimental to the company's interests. After his removal, Joseph Ventrella sought to rescind the FSA and unwind the transfers from the Dorothy Trust to Property Dynamics. Specifically, he filed a verified counterclaim in *Property Dynamics, LLC v. Joseph Ventrella*, 15 CH 9589, one of several cases in chancery court between the parties, and a petition to issue citation to recover real property in the pending probate case. The chancery cases were consolidated with the probate case ("consolidated litigation"). Joseph Ventrella also placed *lis pendens* notices on 15 properties he claimed should be returned to the Dorothy Trust.

¶ 13 Nicholas Ventrella died on March 21, 2016. Shortly before his death, Nicholas put the Northfield residence on the market. According to Joseph Ventrella, the home did not receive fair market offers because James Ventrella and Joseph Santucci had placed a *lis pendens* notice on it in January 2016. Instead, Nicholas entered into multiple option agreements with potential purchasers. Three years after Nicholas's death, Joseph Ventrella, as successor trustee of the Nicholas Trust, sold the Northfield residence at allegedly below market value.

¶ 14    James Ventrella and Joseph Santucci claimed they asked their attorneys, John B. Haarlow, Monte Mann, and Stephen Novack of Novack & Macey, LLP, to place a *lis pendens* on the Northfield residence. They believed if Joseph Ventrella succeeded in unwinding the FSA and rescinding the transfers of the properties that originated with their grandparents, the Northfield residence might be subject to rescission too. The *lis pendens* notice listed the pending probate case (8 P 811), in which Joseph Ventrella had filed his petition and one of the consolidated chancery cases (15 CH 9589), in which he had filed a counterclaim.

¶ 15    In November 2016, Joseph Ventrella filed an amended petition in the probate case, again seeking to rescind the FSA. In 2017, Joseph Ventrella resigned as executor of Berenice's estate, and the new executor, his brother, James Ventrella, dismissed the petition in the probate case without prejudice. In addition, Joseph Ventrella dismissed his counterclaim in the chancery case.

¶ 16    In 2018, the probate court presiding over the consolidated litigation entered summary judgment finding, in part, that Joseph Ventrella had stolen $103,678.97 from a family trust account and at least $152,396.52 from two Property Dynamics's affiliates. The trial court entered a final judgment order on December 20, 2018. As to case number 15 CH 9589 referenced in the *lis pendens* notice on the Northfield residence, the trial court granted "Property Dynamics *** leave to voluntarily dismiss their claims for declaratory judgment, without prejudice, pursuant to 735 ILCS 5/2-1009."

¶ 17    In September 2020, Joseph Ventrella filed a complaint as successor trustee of the Nicholas Trust, alleging slander of title (count I) and abuse of process (count II), arising out of the *lis pendens* notice on the Northfield residence. The complaint alleged that defendants acted maliciously in filing the *lis pendens* notice to deceive potential buyers and mortgage holders and

the Trustee had to sell at an under-market price. The Trustee sought over $1 million in damages for the diminution in value, punitive damages, and attorney's fees and costs.

¶ 18    The attorney defendants, Steven Novack, Monte Mann, and John Haarlow, along with their firm, Novack & Macey, moved to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)(Code)). They argued the attorney litigation privilege and the two-year statute of limitations for claims against attorneys for acts or omissions in the performance of professional services barred the claims against them. See 735 ILCS 5/13-214.3 (West 2020). The attorney defendants also adopted the other defendants' arguments, where applicable.

¶ 19    James Ventrella and Joseph Santucci filed a motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)) for themselves and as managers of Property Dynamics, LLC ("managers"). They raised six grounds for dismissal, including *res judicata* and the absolute litigation privilege. Property Dynamics also filed a motion to dismiss under section 2-619, arguing, in part, that *res judicata* barred the slander of title claim and adopting the other defendants' arguments.

¶ 20    The trial court dismissed the complaint with prejudice, finding *res judicata* barred the slander of title claim and the two-year statute of limitations barred the abuse of process claim. It did not address defendants' other arguments.

¶ 21                              Analysis

¶ 22                         Standard of Review

¶ 23    A section 2-619 motion admits the complaint's legal sufficiency but argues that some defense or affirmative matter defeats the claim. *Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 15 (citing *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008)). When reviewing a section 2-619 dismissal, we accept the complaint's well-pleaded facts as true, along with all

reasonable inferences from those facts in favor of the non-moving party. *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 684 (2010). We review a section 2-619 dismissal *de novo*. *Mabry v. Village of Glenwood*, 2015 IL App (1st) 140356, ¶ 12.

¶ 24                                    Abuse of Process Claim

¶ 25    Preliminarily, we note that although the notice of appeal states the Trustee is appealing the trial court's dismissal of counts I and II, his brief contains no argument on count II, so that issue is forfeited. See Supreme Court Rule 341(h)(7) ("Points not argued are forfeited"); *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 19 ("Plaintiff did not argue the merits of his underlying claim in his opening brief and has, therefore, waived consideration of the merits on appeal").

¶ 26                                    *Res Judicata*

¶ 27    The equitable principle of *res judicata* prevents a multiplicity of lawsuits between the same parties involving the same facts and issues. *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). A *res judicata* issue presents a question of law, which we review *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 28    The three prerequisites for *res judicata* are: (i) a final judgment on the merits made by a court of competent jurisdiction, (ii) identity of causes of action, and (iii) identity of parties or their privies in the lawsuits. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Once satisfied, *res judicata* "bars not only what was actually decided in the first action but also whatever could have been decided." *Id*. *Res judicata* should be applied as fairness and justice require and only to facts and conditions as they existed when the court entered judgment. *Carey v. Neal, Cortina & Associates*, 216 Ill. App. 3d 51, 64 (1991).

¶ 29    In considering whether *res judicata* applies, an order is final and thus appealable if it terminates the litigation between the parties on the merits or disposes the parties' rights on the

entire controversy or on a separate branch of the controversy. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 19 (citing *Hull v. City of Chicago*, 165 Ill. App. 3d 732, 733 (1987)). "A ruling which is not a final order does not in any manner affect or determine any subsequent proceeding." *Arnold Schaffner, Inc. v. Goodman*, 73 Ill. App. 3d 729, 732 (1979).

¶ 30    The party asserting *res judicata* as a preclusion to the second action bears the burden of showing with clarity and certainty what the prior judgment determined. *People ex rel. Scott v. Chicago Park District*, 66 Ill.2d 65, 68 (1976); *Redfern v. Sullivan*, 111 Ill. App. 3d 372, 377 (1983). This is a heavy burden of proof. *Gale v. Transamerica Corp.*, 65 Ill. App. 3d 553 (1978).

¶ 31    The Latin phrase *res judicata* means "a thing adjudicated." Black's Law Dictionary 1425 (11th ed. 2019). At the core of *res judicata* is the intent "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153 (1979); see, *e.g.*, *Philips Electronics N.V. v. New Hampshire Insurance Co.*, 312 Ill. App. 3d 1070, 1080 (2000) (*res judicata* applies to claim fully litigated in earlier proceeding).

¶ 32    If a plaintiff voluntarily dismisses a case under section 2-1009 or if the case is dismissed for want of prosecution, section 13-217 of the Code (735 ILCS 5/13-217 (West 2020) permits a plaintiff to refile the action within one year or within the remainder of the statute of limitations, whichever is greater. Section 13-217 operates as a savings clause to facilitate "disposal of the litigation on the merits and to avoid its frustration upon grounds unrelated to the merits." *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill.2d 489, 497 (1998) (citing *Gendek v. Jehangir*, 119 Ill. 2d 338 (1988)).

¶ 33    Joseph Ventrella filed his counterclaim to rescind the conveyances to Property Dynamics in chancery case 15 CH 9589. Joseph Ventrella eventually voluntarily dismissed his counterclaim, and his brother, James Ventrella, dismissed the petition Joseph filed in the probate case when he

became executor of Berenice's estate. When the trial court entered its judgment against Joseph in the consolidated litigation, it expressly granted Property Dynamics leave to voluntarily dismiss case 15 CH 9859 without prejudice. Thus, the issue raised by Joseph Ventrella in his counterclaim—whether the conveyances to Property Dynamics should be rescinded has not been adjudicated. Nor has the issue of whether the managers engaged in slander of title by placing a *lis pendens* notice on the Northfield residence. Accordingly, *res judicata* does not apply.

¶ 34                                    Litigation Privileges

¶ 35     Nonetheless, we affirm the dismissal of all defendants because other affirmative matter, namely, litigation privileges, barred the action.

¶ 36                                  Absolute Litigation Privilege

¶ 37     Illinois law extends the absolute litigation privilege to the recording of a *lis pendens* notice as it does to a defendant's counterclaim. *Ringier America, Inc. v. Enviro-Technics, Ltd.*, 284 Ill. App. 3d 1102 (1996) sets out the tort of slander of title as it relates to the filing of a *lis pendens* notice. In *Ringier*, the plaintiff filed a complaint alleging that the defendant Enviro-Technics, Ltd., breached a contract to purchase the plaintiff's real estate. *Id.* at 1103. The defendants filed an answer and a counterclaim, admitting an agreement existed to purchase the property but alleging the plaintiff had defaulted by failing to deliver a suitable title commitment as the contract required. *Id.* The defendants sought specific performance or rescission and filed and recorded a *lis pendens* notice. *Id.* at 1104. The plaintiff voluntarily dismissed its suit and filed a new complaint for slander of title, alleging the defendants maliciously and without justification filed the counterclaim and the *lis pendens* notice for the sole purpose of clouding title to interfere with his ability to sell. *Id.* The defendants responded that the litigation privilege covered the *lis pendens* notice. *Id.*

¶ 38    The *Ringier* court recognized an absolute litigation privilege that provides complete immunity from civil action for statements made in the course of litigation, even though the statements are made with malice because public policy favors the free and unhindered flow of information in litigation. *Id*. at 1105 (citing *Starnes v. International Harvester Co.*, 184 Ill. App. 3d 199, 203 (1989)). The *Ringier* court further observed that nearly all other jurisdictions addressing the issue had extended the privilege to filing a *lis pendens* notice, "provided the underlying litigation makes allegations affecting some ownership interest in the subject property." *Id.* The *Ringier* court favorably cited the reasoning from the Supreme Court of California in *Albertson v. Raboff*, 46 Cal.2d 375, 295 P.2d 405 (1956). There, the court stated "[i]t would be anomalous" to hold that a litigant possessed a privilege "to make a publication necessary to bring an action" yet could be sued for defamation by letting anyone know about the action, particularly when a statute expressly authorizes the publication." *Id.* at 409.

¶ 39    The *Ringier* court found that the absolute litigation privilege applied to the allegations defendants made in their counterclaim, and the court extended the same protection to the recording of the associated *lis pendens* notice. *Ringier*, 284 Ill. App. 3d at 1106.

¶ 40    Joseph Ventrella filed pleadings in the underlying litigation seeking to unwind the FSA, rescind conveyances to Property Dynamics, and return them to his mother's estate. The defendants reasonably asserted the Northfield residence, which the grandparents once owned, might be subject to rescission along with the properties against which Joseph Ventrella filed *lis pendens* notices. The underlying litigation—the counterclaim Joseph Ventrella filed in the chancery division case— made allegations affecting his and the defendants' ownership interests. The manager's decision to file a *lis pendens* notice in the same case on property they claim they may have an ownership interest triggers the absolute litigation privilege and cannot be grounds for a slander of title claim.

¶ 41                      Absolute Attorney Litigation Privilege

¶ 42      Illinois's absolute attorney litigation privilege derives from section 586 of the Restatement (Second) of Torts. That section provides, "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

¶ 43      The privilege gives attorneys "the utmost freedom in their efforts to secure justice for their clients." (Internal quotation marks omitted.) *Kurczaba v. Pollock*, 318 Ill. App.3d 686, 701-02 (2000). Further, it facilitates an attorney's need to fully and fearlessly communicate with clients (*Popp v. O'Neil*, 313 Ill.App.3d 638, 642-43 (2000)) and the free flow of truthful information to the courts (*Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165-66 (2003)).

¶ 44      In determining whether the privilege applies, we consider whether a limitation on applying the privilege would frustrate an attorney's ability to settle or resolve cases without resorting to expensive litigation. *Atkinson v. Affronti*, 369 Ill.App.3d 828, 833 (2006). An attorney's motives are irrelevant (*Popp*, 313 Ill. App. 3d at 642), and no liability will attach even at the expense of uncompensated harm to the plaintiff (*O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 25). Nonetheless, for the privilege to apply, communications must relate to proposed or pending litigation (*Golden v. Mullen*, 295 Ill. App. 3d 865, 870 (1998)) and be in furtherance of representation (*Kurczaba*, 318 Ill.App.3d at 706), although this requirement is not strictly applied (*Popp*, 313 Ill. App. 3d at 642).

¶ 45    We agree with the attorney-defendants that the absolute attorney litigation privilege applies to filing the *lis pendens* notice. The grandchildren's FSA applied to "all assets originating in any way, whether by title or funding, from the Estates of [the grandparents], and any trusts or other entities controlled or created by them." Joseph Ventrella filed a petition in the probate case and a counterclaim in the consolidated litigation seeking to rescind the FSA and retract the transfer of numerous properties conveyed to Property Dynamics. The attorneys filed the *lis pendens* at their clients' request based on their belief that if Joseph Ventrella succeeded in rescinding the FSA, the conveyance of the Northfield residence, which the grandparents had once owned, could be set aside. Filing the *lis pendens* notice related to proposed or pending litigation (*Golden*, 295 Ill. App. 3d at 870), and furthered representation of their clients. *Kurczaba*, 318 Ill.App.3d at 706. Moreover, the attorney-defendants did not have to investigate whether their clients' argument had legal merit before filing the *lis pendens* notice. *Atkinson*, 369 Ill. App. 3d at 834.

¶ 46                                Motion To Strike

¶ 47    In his reply brief, the Trustee argued for the first time that the two year statute of limitations applicable to attorneys is not a bar, relying on the Illinois Supreme Court recent decision in *Suburban Real Estate Services, Inc. v Carlson,* 2021 IL 126935. In that case, the Supreme Court held that an action against an attorney does not arise until the plaintiff "has suffered a loss for which monetary damages may be sought." Further, the Trustee asserted damages remained speculative until a buyer exercised the option to purchase the Northfield residence, which occurred a year before the Trustee filed his complaint.

¶ 48    The defendant-attorneys filed a motion to strike that portion of the Trustee's reply brief because it introduced arguments he did not raise in the trial court or his initial brief, as prohibited by Supreme Court Rule 341(h)(7) (Oct. 1, 2020) ("points not argued are forfeited and shall not be

raised in the reply brief") Alternatively, the defendant-attorneys asked for leave to file a surresponse to the Trustee's argument. We agreed to take the motion to strike with the case and granted the defendant-attorney's leave to file a surresponse.

¶ 49 Issues not raised in the trial court generally are forfeited and may not be raised for the first time on appeal. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). The forfeiture rule, however, is an admonition to the parties and not a limitation on our jurisdiction. *Pennymac Corp. v. Jenkins*, 2018 IL App (1st) 171191, ¶ 23. This court may overlook forfeiture to obtain a just result or maintain a sound body of precedent. *Id.* Given that the supreme court issued its decision in *Suburban Real Estate Services, Inc.* after the Trustee filed his initial brief, but before he filed his reply brief, we could consider this new argument to maintain precedent. So, we deny the defendant-attorney's motion to strike.

¶ 50 Even so, we need not address the statute of limitation argument because we affirm the dismissal order on other grounds.

¶ 51 Affirmed.