EARNEST JOHNSON *et al.*, Plaintiffs-Appellants, v. K MART CORPORATION, Defendant-Appellee (Confidential Investigative Consultants, Inc., Defendant).

First District (4th Division) No. 1—98—2172

Opinion filed January 13, 2000.

Johnson, Jones, Snelling, Gilbert & Davis (Thomas E. Johnson and Phillip H. Snelling, of counsel), and Miner, Barnhill & Galland (George F. Galland, Jr., of counsel), both of Chicago, for appellants.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Lawrence C. Di-Nardo and Kristin E. Michaels, of counsel), for appellee.

JUSTICE HALL delivered the opinion of the court:

## I. BACKGROUND

This case involves K mart Corporation's (defendant's) use of private investigators at its distribution center in Manteno, Illinois. Plaintiffs are 55 current or former employees of K mart Corporation. The claims against Confidential Investigative Consultants, Inc., were dismissed. Summary judgment was granted in favor of defendant.

On appeal, plaintiffs contend that: (1) defendant invaded their privacy through an unauthorized intrusion upon their seclusion; (2) defendant invaded their privacy by publicizing private facts concerning them; (3) defendant intentionally inflicted emotional distress upon them; and (4) defendant violated the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (225 ILCS 446/1 *et seq.* (West 1996)). For the foregoing reasons, we affirm in part and reverse in part and remand with instructions.

The following facts are relevant to this appeal. Plaintiffs are or were employed at defendant's distribution center (center) in Manteno, Illinois. Defendant's center receives, stores, and supplies merchandise. The center is a 1.5-million-square-foot warehouse. Approximately 500 persons are employed at the center.

During the summer of 1992, the center began receiving merchandise valued at several million dollars. Since its opening, the center has experienced theft, vandalism, and sabotage. Defendant also had concerns about the sale and use of drugs at the center.

In August 1992, an on-site security audit of the center was conducted. Confidential Investigative Consultants, Inc. (CIC), was interviewed to determine if it could provide undercover investigative services to monitor acts of vandalism and drug use at the center. CIC was a licensed investigative security company located in Chicago, Illinois. CIC performed undercover investigative and security work. Ed Gunther, vice president of CIC, and George McElroy, general manager of the center, met twice in August 1992 regarding CIC's ability to perform an undercover investigation.

Gunther and McElroy agreed that an undercover investigator posing as an employee would be placed in the center. Periodic reports detailing the investigator's observations were to be sent to a post office box registered in CIC's name and located in Frankfort, Illinois, to maintain confidentiality. McElroy requested that CIC's investigation be discussed with him only.

CIC sent Al Posego (Posego), an undercover investigator, to the center. Posego posed as a janitor at the center. In his deposition, Posego stated that he was specifically told that the focus of defendant's

concern was theft, sabotage, safety, and drug use. Posego held a "blue card," a permit issued by the State of Illinois which signifies that an individual has been trained in investigative and security work.

In November 1992, Janet Posego (Ms. Posego), Posego's wife, began working as an undercover investigator for defendant. Ms. Posego posed as an employee in the repack department. Ms. Posego also held a blue card from the State of Illinois. In her deposition, Ms. Posego stated that her role as undercover investigator at the center was to gather information on theft and drug use.

The Posegos submitted handwritten reports to CIC by mail every few days. These reports were then forwarded to defendant. The Posegos wrote the reports from memory based on the events they observed and conversations they participated in or overheard. The reports contained information including, but not limited to: (1) *employee family matters* (*i.e.*, the criminal conduct of employees' children, incidents of domestic violence and impending divorces); (2) *romantic interests/sex lives* (*i.e.*, sexual conduct of employees in terms of number/gender of sexual partners); (3) *future employment plans* (*i.e.*, which employees were looking for new jobs and which employees were planning to quit without giving notice); (4) *complaints about defendant* (*i.e.*, the quality of the company and employee's view that defendant was "screwing people up"); and (5) *personal matters and private concerns* (*i.e.*, employee's prostate problems, paternity of employee's child, characterization of certain employees as alcoholics because they drank "frequently").

In early 1993, McElroy informed Chad Yager, the center's loss control manager, of the presence of the undercover investigators at the center. Yager began overseeing the investigation. The first copies of the investigative reports received by Yager contained information regarding union activity at the center. Yager then told CIC that he did not want information regarding union activity in the reports. Such references were then edited. At this point, John Gemmaka, the director of human resources, was made aware of the investigation.

In February 1993, defendant terminated Gemmaka based on allegations unrelated to this appeal. After Gemmaka's termination, Gemmaka exposed the undercover investigative operation to one of the plaintiffs, Lewis Hubble. Hubble subsequently researched Posego's background and confronted Posego about his status as an undercover investigator. Posego admitted that he and Ms. Posego were private investigators posing as employees for the purposes of observing theft and drug use at the center.

Posego informed Gunther that his role as an undercover agent had been exposed. Gunther then notified defendant. By April 1993, CIC's operation had been terminated.

In 1993, Local 705 of the International Brotherhood of Teamsters began organizing a campaign about the Manteno distribution center. A few weeks prior to the election, teamster officials contacted employees regarding the undercover investigation that had been conducted at the center. Teamster officials then met with employees and disclosed copies of the reports to them. The investigative reports were not received from any representative of defendant. According to union officials, the reports were received from an anonymous source.

The parties cross-motioned for summary judgment. Summary judgment was granted in favor of defendant. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

In summary judgment cases, a reviewing court conducts a *de novo* review of the evidence. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. *Espinoza*, 165 Ill. 2d at 113. Where the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *First of America Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 283, 681 N.E.2d 45 (1997). If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 839, 617 N.E.2d 1346 (1993).

### B. Intrusion Upon Seclusion

■ Plaintiffs contend that defendant invaded their privacy by intruding upon their seclusion. As a preliminary matter, we note that the Illinois Supreme Court has never explicitly recognized a cause of action for intrusion into seclusion. *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 745, 652 N.E.2d 1351 (1995). In *Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 534 N.E.2d 987 (1989), the supreme court discussed this tort as articulated by the Restatement (Second) of Torts (1977) and Prosser & Keeton on Torts (W. Keeton, Prosser & Keeton on Torts § 117 (5th ed. 1984)), but stated that its discussion did not imply a recognition of the action by the court. *Lovgren*, 126 Ill. 2d at 416-17. There is a conflict among the appellate court districts as to whether the intrusion into seclusion tort is actionable in Illinois. *Lovgren*, 126 Ill. 2d at 417-18. This conflict has not been resolved. *Lovgren*, 126 Ill. 2d at 417-18. In 1979, this district declined to recognize a cause of action for intrusion upon seclusion. See *Kelly v. Franco*, 72 Ill. App. 3d 642, 391 N.E.2d 54 (1979). This

court noted that the law in Illinois was inconsistent on this issue and held that even if it were to recognize the cause of action, the plaintiff's allegations were insufficient to support a cause of action for unreasonable intrusion upon seclusion. *Kelly*, 72 Ill. App. 3d at 646-47.

The Third District recognized the intrusion upon seclusion tort in *Melvin v. Burling*, 141 Ill. App. 3d 786, 490 N.E.2d 1011 (1986). In *Melvin*, the court set out four elements that a plaintiff must plead and prove to state a cause of action for intrusion upon seclusion: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering. *Melvin*, 141 Ill. App. 3d at 789. See also the Second District case of *Benitez v. KFC National Management Co.*, 305 Ill. App. 3d 1027, 714 N.E.2d 1002 (1999), recognizing a cause of action for unreasonable intrusion upon the seclusion of another.

Since the Third District's decision in *Melvin*, the first district has applied *Melvin*'s four elements without directly addressing the issue of whether a cause of action for intrusion upon seclusion exists in this state. In *Mucklow v. John Marshall Law School*, 176 Ill. App. 3d 886, 531 N.E.2d 941 (1988), *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900 (1990), and again in *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 652 N.E.2d 1351 (1995), this district found that the plaintiffs' allegations did not satisfy the first element of *Melvin*, but failed to express a view as to the conflict regarding the recognition of the intrusion upon seclusion cause of action. *Mucklow*, 176 Ill. App. 3d at 894; *Miller*, 202 Ill. App. 3d at 981; *Dwyer*, 273 Ill. App. 3d at 745-46.

We now expressly recognize a cause of action for the tort of invasion of privacy by intrusion upon seclusion in this state. We adopt the four elements set forth in *Melvin v. Burling*, 141 Ill. App. 3d 786, 490 N.E.2d 1011 (1986).

In the instant case, the circuit court entered summary judgment in favor of defendant, finding that there was no unauthorized intrusion because plaintiffs had voluntarily disclosed the complained-of information to the investigators and that defendant's actions did not amount to an offensive or objectionable intrusion. We find that the circuit court erred in entering summary judgment in favor of defendant. We believe that a genuine issue of fact exists regarding whether there was an unauthorized intrusion. It is true, as defendant argues, that plaintiffs willingly provided these personal details to the investigators. However, we believe that the means used by defendant to induce plaintiffs to reveal this information were deceptive. Specifically, we

believe that the act of placing private detectives, posing as employees, in the workplace to solicit highly personal information about defendant's employees was deceptive. A disclosure obtained through deception cannot be said to be a truly voluntary disclosure. Plaintiffs had a reasonable expectation that their conversations with "coworkers" would remain private, at least to the extent that intimate life details would not be published to their employer.

The evidence presented shows that defendant placed undercover investigators posing as employees in the plant to obtain information regarding theft, vandalism and drug use at the plant. The evidence further shows that along with this information, the investigators compiled information regarding employees' family problems, health problems, sex lives, future work plans, and attitudes about defendant and reported this extremely personal information to defendant. The investigators gathered this information not only on defendant's premises, but also outside the workplace at social gatherings. The investigators testified that they included anything and everything that they heard in their reports. Defendant admitted that it had no business purpose for gathering information about employees' personal lives. Yet, defendant never instructed the investigators to change their practices or to stop including the highly personal information in their reports. We find that a material issue of fact exists regarding whether a reasonable person would have found defendant's actions to be an offensive or objectionable intrusion. Thus, summary judgment should not have been granted.

## C. Publication of Private Facts

■ Plaintiffs contend that defendant invaded their privacy through the publication of private facts concerning them. A successful cause of action for the public disclosure of private facts requires the plaintiff to prove that: (1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person. *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 978, 560 N.E.2d 900. In the instant case, the facts at issue were clearly private. They included such things as employees' family matters, health problems, and sex lives. This highly personal information was acquired through a deception and then reported to plaintiffs' employer. We believe that an issue of fact exists regarding whether a reasonable person would find it highly offensive that these personal matters were made public to his employer.

We next consider the publicity requirement. *Miller v. Motorola, Inc.*, is instructive. *Miller*, 202 Ill. App. 3d 976, 560 N.E.2d 900. In *Miller*, the plaintiff alleged that her employer had invaded her privacy

when, without her authorization, the employer told her coworkers that she had undergone mastectomy surgery. The lower court in *Miller* dismissed the plaintiff's complaint, holding that she failed to state a cause of action for invasion of privacy. However, on appeal, the court held that egregious conduct resulting in disclosure to a limited audience is actionable if "a special relationship exists between the plaintiff and the *'public'* to whom the information has been disclosed." (Emphasis added.) *Miller*, 202 Ill. App. 3d at 980. According to *Miller*, if the plaintiff is not a public figure, such a *public* may be fellow employees, club members, church members, family, or neighbors. *Miller*, 202 Ill. App. 3d at 980-81.

■ We adopt the position of the court in *Miller*. We too hold that the public disclosure requirement may be satisfied by proof that the plaintiff has a special relationship with the "public" to whom the information is disclosed. However, we also believe that the rationale in *Miller* should be extended to include an employer as a member of a particular public with whom a plaintiff may share a special relationship. The evidence shows that personal details about plaintiffs' private lives were disclosed to their employer by the investigators. We find that these facts raise a genuine issue as to whether publicity was given to private facts. Therefore, we find that summary judgment should not have been granted.

### D. Intentional Infliction of Emotional Distress

■ Plaintiffs contend that defendant is liable for intentional infliction of emotional distress. A cause of action for intentional infliction of emotional distress is stated when the plaintiff alleges facts that establish: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct. *Miller v. Equitable Life Assurance Society*, 181 Ill. App. 3d 954, 956, 537 N.E.2d 887 (1989); *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988).

■ In the case *sub judice*, we believe that the matter made public was private. We also believe that publicity given to private facts would be highly offensive to a reasonable person. Therefore, it is our position that there are genuine fact issues as to: (1) whether defendant's conduct was extreme and outrageous; and (2) whether defendant knew that severe emotional distress was certain or substantially certain to result from its conduct. However, to advance a successful cause of action for the intentional infliction of emotional distress and to overcome a ruling of summary judgment, there must be a material issue of fact

concerning all three elements of this tort as set forth above. Plaintiffs have failed to establish that they suffered severe emotional distress as required by element two. Here, plaintiffs merely note feelings of stress or distrust. We believe that feelings of stress and distrust neither satisfy this requirement nor constitute a question of fact regarding the severity of emotional distress suffered by plaintiffs. See *Miller v. Equitable Life Assurance Society*, 181 Ill. App. 3d 954, 957, 537 N.E.2d 887 (1989) (holding that the plaintiff-employee's "stress" was not severe enough to establish cause of action for intentional infliction of emotional distress where she alleged that her coworkers were inconsiderate, uncooperative, unprofessional and unfair). Thus, because no fact issue exists as to the severity of emotional distress suffered by plaintiffs, we find that the circuit court properly entered summary judgment in favor of defendant as it relates to plaintiffs' claim of intentional infliction of emotional distress.

### E. Violation of the Act

■ Plaintiffs contend that defendant is in violation of the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (Act). Section 120 of the Act states, in pertinent part:

> "(a) The Department may refuse to issue, renew or restore, or may suspend or revoke any license \*\*\* or may place on probation, reprimand, or fine \*\*\* or take any other disciplinary action the Department may deem appropriate \*\*\* [against] any person, corporation, or partnership licensed or registered under this Act for any of the following reasons:
>
> \* \* \*
>
> (3) Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public.
>
> \*\*\*
>
> (5) Performing any services in a grossly negligent manner or permitting any of licensee's registered employees to perform services in a grossly negligent manner, regardless of whether actual damage to the public is established." 225 ILCS 446/120 (West 1996).

The intent of the General Assembly in enacting this statute is to regulate persons and businesses licensed under this act in an effort to protect the public. 225 ILCS 446/10 (West 1996). Section 15 of the Act clearly enumerates those to whom the Act applies. Section 15 in relevant part states:

> "It is unlawful for any person to act as a private detective, private security contractor, private alarm contractor, or locksmith, or to advertise or assume to act as any one of these, or to use any other

title implying that the person is engaged in any of these practices unless licensed by the Department." 225 ILCS 446/15 (West 1996). Thus, in the instant case, the Act does not extend to defendant because defendant is not a licensee under the Act. If the Act provides a private right of action to plaintiffs, plaintiffs must begin by filing a complaint against the appropriate party. We find that summary judgment on this count was properly granted.

## F. National Labor Relations Act

■ Defendant alternatively contends that plaintiffs' amended complaint is preempted by the National Labor Relations Act (NLRA) (29 U.S.C. § 151 *et seq.* (1994)). The primary purpose of the NLRA is to guarantee labor unions the right to act in concert. 29 U.S.C. § 157 (1994). Plaintiffs' right of unionization is not at issue here, and, therefore, defendant's claim is without merit.

Accordingly, we affirm the circuit court's grant of summary judgment in favor of defendant with respect to plaintiffs' allegations of intentional infliction of emotional distress and violation of the Act. The summary judgment order entered on defendant's behalf, as it pertains to plaintiffs' allegations of invasion of privacy through intrusion upon seclusion and the publication of private facts, is reversed and remanded for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with instructions.

SOUTH, P.J., and WOLFSON, J., concur.