CHRISTOPHER KURCZABA *et al.*, Plaintiffs-Appellants, v. SCOTT POLLOCK, Defendant-Appellee.

First District (3rd Division) No. 1—99—4283

Opinion filed December 27, 2000.

Schwartz & Freeman, of Chicago (Daniel J. Voelker, Brad S. Grayson, and Lee E. Farbman, of counsel), for appellants.

Qinlan & Crisham, Ltd., of Chicago (Jeffrey T. Kubes, David M. Jenkins, and Edward Fitzsimmons Dunne, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Christopher Kurczaba (Kurczaba) and Horn, Whitcup, Arce, Villasuso & Kurczaba (Horn) (also collectively referred to as plaintiffs) appeal from an order of the circuit court dismissing their complaint alleging defamation *per se*, defamation *per quod*, and false light invasion of privacy against defendant Scott Pollock (Pollock or defendant) pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1998)). On appeal, plaintiffs contend that the trial court erred in dismissing their complaint because they set forth sufficient facts to sustain each cause of action and no privilege is applicable to defendant's conduct. For the reasons set forth below, we affirm in part, reverse in part, and remand in part.

## STATEMENT OF FACTS

Kurczaba and Pollock are both licensed attorneys who concentrate their practice in immigration law, particularly within the Chicago Polish community. Horn is a law firm that also concentrates its practice in immigration law. Both Kurczaba and Horn are well known in the Polish community. Kurczaba is the president of the Polish-American Congress, which is an umbrella organization representing over 75 Polish-American organizations. Kurczaba and his family are also principals in a business, Sunrise Travel (Sunrise), which provides travel-related services to individuals in the Chicago area. Sunrise derives much of its business from the Polish community. Similarly, Kurczaba obtains much of his legal business as a result of referrals from members of the Polish community, including individuals working for or associated with Polish newspapers.

Pollock represents various individuals in a class action lawsuit, Malus v. Sunrise Travel & Tours, Inc., No. 97 CH 1398 (the *Malus* action). In August 1998, Pollock filed an eight-count amended complaint (the *Malus* complaint), without leave of court. The *Malus* complaint contained allegations of wrongdoing by Sunrise and its owners, Kurczaba's parents, Pola and Edward Kurczaba, Leonard Whitcup (Whitcup), the law firm of Whitcup & Arce, and the Baranow Corporation of which Kurczaba was the registered agent. Kurczaba was also a member of the law firm of Whitcup & Arce. The *Malus* complaint alleged wrongdoing in the nature of unauthorized practice of law by individuals not licensed as attorneys, who were associated with the *Malus* defendants, and assistance by Whitcup and his law firm in the unauthorized practice of law. The *Malus* complaint also contained individual counts on behalf of four of the class members, alleging fraud,

negligence and consumer fraud. Kurczaba was not named as a defendant in the *Malus* complaint.

Sometime after the *Malus* complaint was filed, Whitcup & Arce dissolved. Many of its members then formed the Horn firm, including Kurczaba. Horn distributed an advertisement to the legal community, in Polish, which announced the new firm and contained Kurczaba's photograph (the ad).

In October or November 1998, before being granted leave to file an amended complaint, Pollock mailed a package containing a copy of the ad stapled to the *Malus* complaint to various prominent members and institutions of the Chicago and Polish communities, including three Polish newspapers, the Polish Consul General and Minister Plenipotentiary, the Polish National Alliance, the National President of the Polish-American Congress, the President of the Advocates Society (an association of Polish-American attorneys), the Chicago Tribune, and the Department of Labor.

On November 20, 1998, plaintiffs filed a complaint for preliminary and injunctive relief against Pollock, alleging causes of action for false light invasion of privacy and intentional interference with prospective economic advantage. On January 15, 1999, Pollock filed a motion to dismiss plaintiffs' complaint, arguing that the complaint failed to plead sufficient facts to sustain the causes of action and that his conduct was protected by an absolute privilege. Pollock further argued that Horn could not sustain a cause of action for false light invasion of privacy because it was not a natural person. The trial court granted Pollock's motion on April 8. On August 6, plaintiffs were granted leave to file an amended complaint. In the amended complaint (complaint), plaintiffs alleged causes of action for defamation *per se*, defamation *per quod*, and false light invasion of privacy.

In general, plaintiffs' complaint alleged that the *Malus* complaint alleged dishonesty, deception, fraud, and professional malfeasance by the *Malus* defendants and that these allegations of misconduct were all false. Plaintiffs also alleged that Kurczaba was mentioned in the allegations of the *Malus* complaint, was identified as Pola's son, and was an attorney with Whitcup. Plaintiffs further alleged that Pollock was aware that some of the allegations in the *Malus* complaint were false or that he acted in reckless disregard of the truth or falsity of the allegations in disseminating the package. Plaintiffs also alleged that Kurczaba had a relationship and engaged in continuous discussions and activities with those individuals and entities to whom the package was disseminated. According to plaintiffs' complaint, Pollock sent the package to damage Kurczaba's and Horn's reputations. Plaintiffs also alleged that they had suffered injury to their personal and professional reputations.

With respect to plaintiffs' allegation of defamation *per se* (count I), plaintiffs alleged that the *Malus* complaint contained false statements regarding the professional integrity of the *Malus* defendants, and false statements about the manner in which the *Malus* defendants conducted business and the manner in which the attorneys handled immigration matters. Plaintiffs alleged that, by sending the *Malus* complaint along with the ad, Pollock was attempting to connect Horn and Kurczaba to the allegations of wrongdoing in the *Malus* complaint. Pollock's conduct also suggested that Kurczaba and Horn lacked professional integrity, handled matters in an inappropriate and negligent manner, imputed to plaintiffs an inability to perform their duties, and imputed a want of integrity in discharging their duties as attorneys. Plaintiffs alleged they had suffered prejudice in their profession. Plaintiffs also alleged that Pollock's conduct was wilful and malicious.

With respect to plaintiffs' allegation of defamation *per quod* (count II), plaintiffs alleged that Pollock's attachment of the ad to the *Malus* complaint injured and damaged their reputations because the recipients of these documents would draw and had drawn the conclusion that plaintiffs lacked integrity and professional ability. Plaintiffs also alleged that they suffered loss of business income, great embarrassment, public humiliation, mental anguish and emotional distress.

Lastly, with respect to plaintiffs' allegation of false light invasion of privacy (count III), plaintiffs alleged that Pollock intended to and did defame them by placing them in a false light by widely disseminating the package. Plaintiffs further alleged that Pollock's conduct was wilful and malicious and was designed to intentionally cause injury to their personal and professional reputations.

On September 10, Pollock filed a motion to dismiss plaintiffs' complaint, arguing that plaintiffs failed to set forth sufficient facts to sustain their causes of action, truth was a defense to defamation, and that his conduct was protected by various privileges.

The trial court granted Pollock's motion to dismiss on November 15, finding that Pollock was privileged in circulating the documents because it was a fair report of a true complaint and the ad. With respect to the defamation *per se* count, the trial court concluded that plaintiffs failed to satisfy the pleading requirements for such a claim. With respect to the defamation *per quod* count, the trial court concluded that plaintiffs failed to sufficiently plead special damages. Lastly, with respect to the false light invasion of privacy count, the trial court concluded that the law firm could not sustain such a cause of action because the court was persuaded by case law from other jurisdictions that a partnership could not be subject to a false light invasion of privacy action. This appeal followed.

## ANALYSIS

■ A motion to dismiss pursuant to section 2—615 of the Code tests the legal sufficiency of the plaintiff's complaint. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162, 700 N.E.2d 1064 (1998). "In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as being true and all reasonable inferences from those facts are drawn in favor of the plaintiff." *Lykowski*, 299 Ill. App. 3d at 162. "The question on appeal from the granting of a section 2—615 motion is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Lykowski*, 299 Ill. App. 3d at 162-63. A section 2—615 motion "does not raise affirmative factual defenses but alleges only defects on the face of the complaint." *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). "[F]or purposes of a section 2—615 motion, a court may not consider 'affidavits, affirmative factual defenses or other supporting materials.' [Citation]" *Kirchner v. Greene*, 294 Ill. App. 3d 672, 677, 691 N.E.2d 107 (1998). We review the trial court's decision *de novo*. *Lykowski*, 299 Ill. App. 3d at 162.

## TRUTH AS A DEFENSE

In nonpublishable material, we conclude that the truth defense was not a basis to dismiss plaintiffs' complaint because Kurczaba was not named as a defendant in the *Malus* complaint and the statements contained in the complaint had not been proven as true.

## DEFAMATION *PER SE*

In nonpublishable material, we conclude that the dissemination of the *Malus* complaint could constitute defamation *per se*, that the material defendant disseminated was not subject to an innocent construction and, accordingly, that the trial court erred in dismissing count I of plaintiffs' complaint.

## DEFAMATION *PER QUOD*

Plaintiffs contend that they pled adequate allegations for defamation *per quod* (count II), including special damages. According to plaintiffs, based on *Bryson*, allegations of general economic loss alone are now sufficient allegations of special damages and, because they pled that their reputations were damaged and they lost business and income, they sufficiently pled special damages. Defendant contends that plaintiffs failed to sufficiently plead special damages because plaintiffs did not plead any facts to show how their reputations were tarnished, what business was lost or any monetary loss. The trial court dismissed this count, finding that plaintiffs' allegations of special damages were insufficient.

■ "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201 (1992). If a defamatory statement does not fall within a *per se* category, "the plaintiff must plead and prove that she sustained actual damage of a pecuniary nature ('special damages') to recover." *Bryson*, 174 Ill. 2d at 87-88.

The parties seem to agree that the only issue before this court, as to count II, is whether plaintiffs sufficiently pled special damages. We first observe, contrary to plaintiffs' argument, that *Bryson* did not change the requirements for pleading special damages. In *Bryson*, the court stated that "the plaintiff must plead and prove that she sustained actual damage of a pecuniary nature ('special damages') to recover." *Bryson*, 174 Ill. 2d at 87-88. Additionally, the court stated that "the plaintiff must plead and prove actual damage to her reputation and pecuniary loss resulting from the defamatory statement ('special damages') to recover." *Bryson*, 174 Ill. 2d at 104. These are the only two statements the court made concerning special damages. It did not otherwise address the issue, nor did it ascertain whether the *Bryson* plaintiff's special damage allegations were sufficient. We find nothing in *Bryson* to conclude that it changed the requirements for pleading special damages.

■ Illinois courts have consistently stated that general allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*. *Becker v. Zellner*, 292 Ill. App. 3d 116, 127, 684 N.E.2d 1378 (1997); *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870, 658 N.E.2d 1225 (1995); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318, 628 N.E.2d 884 (1993); *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733, 554 N.E.2d 988 (1990). While our independent research has revealed no specific definition or details of precisely what special damages are, one court found allegations to be sufficient. *Becker*, 292 Ill. App. 3d 116. In *Becker*, allegations that the defamatory material "caused or contributed to Plaintiffs losing prospective employment opportunities with respect to the preparation of a civil complaint to be filed in federal court on behalf of [a client]" were found to be sufficient because the allegations alleged that a third party had actually stopped doing business with the plaintiffs. *Becker*, 292 Ill. App. 3d at 127.

On the other hand, most courts have found allegations to be insufficient to allege special damages. See *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416-17, 667 N.E.2d 1296 (1996) (allegations that the

plaintiff "ha[d] been damaged monetarily by losing gainful employment and wages" and that she "ha[d] suffered great mental pain and anguish and incurred great expense for the treatment thereof"); *Quinn*, 276 Ill. App. 3d at 870 (allegations that a franchiser refused to grant the plaintiff a franchise); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 395, 652 N.E.2d 1077 (1995) (allegations that the plaintiff "ha[d] lost patients who would have otherwise presented themselves for treatment"); *Taradash*, 260 Ill. App. 3d at 318 (allegations that former customers refused to deal with the plaintiff, that he was unable to sell his product, and that he lost commissions and income); *Schaffer*, 196 Ill. App. 3d at 733 (allegations that the plaintiff had been disgraced and injured in his professional reputation); *Heerey v. Berke*, 188 Ill. App. 3d 527, 532, 544 N.E.2d 1037 (1989) (allegations that the plaintiff suffered from "distress of mind, mental anguish, acute nervousness, bodily pain and that her reputation for honesty and integrity, business opportunities, as well as her standing in her professions ha[d] been impaired"); *Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 585-86, 506 N.E.2d 1370 (1987) (allegations that the plaintiff was exposed to "public hatred, contempt, and ridicule and tended to deprive [the plaintiff] of public confidence and injured it in its business and reputation"); *von Solbrig Memorial Hospital v. Licata*, 15 Ill. App. 3d 1025, 1031, 305 N.E.2d 252 (1973) (allegations that the plaintiff suffered ill health, emotional distress and damage to reputation and medical practice).

In the instant case, plaintiffs alleged that they "have suffered a loss of business and income" and "have suffered great embarrassment, public humiliation, mental anguish and emotional distress." Based on the foregoing authority, we conclude that plaintiffs' allegations of special damages are insufficient. Thus, the trial court properly dismissed count II of plaintiffs' complaint.

## FALSE LIGHT INVASION OF PRIVACY

Plaintiffs initially contend that count III, alleging a cause of action for false light invasion of privacy, as to Kurczaba, should not have been dismissed even though the trial court made no ruling with respect to his individual cause of action. Plaintiffs further contend that they pled all necessary elements to sustain a cause of action for false light invasion of privacy. With respect to the element of falsity, plaintiffs pled that the *Malus* complaint itself was false because it was filed without leave of court and, therefore, it was not a court document. Plaintiffs also pled that all allegations of wrongdoing in the *Malus* complaint were false, thereby necessarily meaning that each specific individual statement of wrongdoing was false. With respect to

the element of being placed in a false light before the public, plaintiffs contend that the documents were widely distributed throughout the Polish community and this is a large enough "public." They further contend that if this "public" is not sufficient, an exception to the rule applies—the special relationship exception. According to plaintiffs, Kurczaba held a special relationship with the recipients of the documents because he was so prominent in the community.

Defendant contends that plaintiffs have waived any issue with respect to Horn's claim for false light invasion of privacy. Substantively, defendant argues that plaintiffs did not allege what specific statements in the *Malus* complaint were false and, thus, count III was properly dismissed. With respect to the "publicity" element, defendant argues that the dissemination of the *Malus* complaint and ad was not to the public at large and plaintiffs have not alleged that the documents were published by the newspapers that received them. Defendant further argues that the special relationship exception does not apply because this exception applies to a limited class of individuals and plaintiffs have not alleged that any of the recipients fell within these classes. Additionally, defendant contends that the fact Kurczaba was prominent and had a "purported stature" in the community is insufficient to establish a special relationship and, similarly, the fact that the materials were disseminated to "business associates" is insufficient. Lastly, defendant argues that the recipients had a vested interest in protecting the Polish community.

■ To sustain a cause of action for false light invasion of privacy, a plaintiff must plead and prove that: (1) he or she was placed in a false light before the public as a result of the defendant's actions; (2) "the false light in which the plaintiff[ ] [was] placed would be highly offensive to a reasonable person; and (3) the defendant[ ] acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kirchner*, 294 Ill. App. 3d at 682.

The only issue before this court is whether plaintiffs' complaint alleged sufficient facts as to Kurczaba to state a cause of action for false light invasion of privacy. Plaintiffs have not argued the propriety of the trial court's dismissal of Horn's allegations and, therefore, have waived that issue. *JoJan Corp. v. Brent*, 307 Ill. App. 3d 496, 508, 718 N.E.2d 539 (1999). However, we note that the trial court did not address the individual action presented by Kurczaba in dismissing plaintiffs' complaint.

■ With regard to the element of falsity, plaintiffs alleged that "[t]he allegations of wrongdoing in the Amended [*Malus*] Complaint are false." Defendant relies on *Kirchner* in support of his position that

plaintiffs' complaint was properly dismissed because plaintiffs failed to specifically and directly identify each false statement in the *Malus* complaint. In *Kirchner*, the court stated that "[a]bsent some allegation as to what specific statement was false, a claim based on *false* light simply fails to satisfy the most basic element of the cause of action." (Emphasis in original.) *Kirchner*, 294 Ill. App. 3d at 683. We find that because plaintiffs alleged that all allegations of wrongdoing in the *Malus* complaint were false, this necessarily encompasses and includes each individual statement of wrongdoing. Thus, we conclude that plaintiffs sufficiently alleged falsity. *Kirchner* is distinguishable because there the complaint was "completely devoid" of any allegations of falsity of any statement made by the defendant.

█ █ With regard to the element of publicity, the Restatement (Second) of Torts states: "[A]ny publication in a newspaper or magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section." Restatement (Second) of Torts § 652D, Comment *a*, at 384-85 (1977).[1] In *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900 (1990), the plaintiff filed a lawsuit against the defendant alleging public disclosure of private facts. The defendant was the plaintiff's employer and had told the plaintiff's coworkers that the plaintiff had undergone a mastectomy. Following the Restatement (Second) of Torts, the *Miller* court adopted the position that the "public disclosure requirement may be satisfied by proof that the plaintiff has a special relationship with the 'public' to whom the information is disclosed." *Miller*, 202 Ill. App. 3d at 981. The rationale for this rule was that "even though the disclosure was made to a limited number of people," the disclosure may be just as devastating to the person because of a special relationship between the person and the people to whom the information had been disclosed. *Miller*, 202 Ill. App. 3d at 980. The *Miller* court, quoting the Michigan Supreme Court, further stated:

> " 'Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a "serious interference" with plaintiff's right to privacy, although it might be "unneces-

---

[1]Section 652D relates to publicity given to private life. Section 652E relates to publicity placing a person in a false light. However, Section 652E specifically refers to section 652D, comment *a*, for purposes of interpreting the term "publicity." Restatement (Second) of Torts § 652E, Comment *a*, at 395 (1977).

sary" or "unreasonable". An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure[,] or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure.' " *Miller*, 202 Ill. App. 3d at 980-81, quoting *Beaumont v. Brown*, 401 Mich. 80, 104-05, 257 N.W.2d 522, 531 (1977). The *Miller* rule has become known as the special relationship exception.

■ The special relationship exception was limited by the court in *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 660 N.E.2d 180 (1995), where the court held that disclosure to persons, even in a special relationship, does not satisfy the publicity requirement in a public disclosure of private facts cause of action if the individual to whom the disclosure was made had a "natural and proper interest" in the disclosure. *Roehrborn*, 277 Ill. App. 3d at 185. The *Roehrborn* court found that disclosure by the defendant chief of police to the administrator of the Police Training Institute that the plaintiff had failed psychological and polygraph examinations was proper because the administrator had a natural and proper interest in the performance of its potential candidates. Similarly, in *Doe v. TCF Bank Illinois, FSB*, 302 Ill. App. 3d 839, 707 N.E.2d 220 (1999), which involved a cause of action based on public disclosure of private facts, the court concluded that a loan officer's disclosure of a husband's serious credit card debt to his wife, which information the husband had taken great efforts to hide, was proper because the wife had a natural and proper interest in knowing the husband's debts since she could be potentially liable for them. *Doe*, 302 Ill. App. 3d at 843.

In *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 723 N.E.2d 1192 (2000), *appeal allowed*, 188 Ill. 2d 565, 729 N.E.2d 496 (2000), the court agreed with *Miller*, stating, "We too hold that the public disclosure requirement may be satisfied by proof that the plaintiff has a special relationship with the 'public' to whom the information is disclosed." *Johnson*, 311 Ill. App. 3d at 580. The *Johnson* court extended the special relationship exception to cover an employer as a member of the particular public to whom a plaintiff may have a special relationship. *Johnson*, 311 Ill. App. 3d at 580. The *Johnson* court, however, failed to consider the *Roehrborn* or *Doe* limitation.

In *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 728 N.E.2d 547 (2000), *appeal allowed*, 189 Ill. 2d 702, 734 N.E.2d 898 (2000), the court found a special relationship between the

plaintiffs and the chairman of the trustee of the school board at which the plaintiff husband worked and to whom the defendant child social worker disclosed offensive materials. *Poulos*, 312 Ill. App. 3d at 740. In reaching its decision, the *Poulos* court directly addressed the special relationship exception in connection with a false light invasion of privacy cause of action. The *Poulos* court first noted that what is necessary to establish the "before the public" element had not yet been decided by the supreme court or the appellate court. However, the *Poulos* court did note that the issue had been addressed in connection with public disclosure of private facts causes of action. Because the two causes of action were closely related and both are branches of the tort of invasion of privacy, the *Poulos* court found *Miller* instructive. *Poulos*, 312 Ill. App. 3d at 739. After discussing the rationale of *Miller*, the *Poulos* court adopted the special relationship exception in false light invasion of privacy cases. *Poulos*, 312 Ill. App. 3d at 740. According to the court, the "before the public" element "may be satisfied by establishing that false and highly offensive information was disclosed to a person or persons with whom a plaintiff has a special relationship." *Poulos*, 312 Ill. App. 3d at 740. The court, however, rejected the limitation placed on the exception by *Roehrborn* and *Doe*, finding that such limitation had no relevance in a false light claim. *Poulos*, 312 Ill. App. 3d at 740 n.1. Specifically, the court stated: "Indeed, it defies logic to suggest *** that a person with whom a plaintiff has a special relationship may have a natural and proper interest in learning information about the latter which is not only highly offensive but also false. That limitation is not adopted." *Poulos*, 312 Ill. App. 3d at 740 n.1.

Initially, we disagree with defendant that the class to whom the special relationship exception is applicable is limited to fellow employees, club members, church members, family, or neighbors. The *Johnson* court extended the class to include employers. *Johnson*, 311 Ill. App. 3d at 580. Also, because *Poulos* specifically addressed false light invasion of privacy claims—the cause of action before us—we find it and not *Roehrborn* or *Doe* controlling. Thus, we conclude that defendant's argument that the recipients of the *Malus* complaint and ad had a vested interest in the materials is irrelevant.

■ Assuming, *arguendo*, that the public to which defendant disseminated the materials was not sufficiently large, we nonetheless find that one could reasonably conclude that a special relationship existed between Kurczaba and the recipients. It is common sense that the Polish community is a small, close-knit community, whose members rely on each other. Kurczaba is not only a prominent attorney in the community but also president of the Polish-American Congress. This orga-

nization is an umbrella for 75 other organizations in Illinois. The members of these organizations could be considered akin to fellow club members. Moreover, the recipients are within the class of individuals who were very important to Kurczaba, and if false and offensive information was disclosed to them, Kurczaba could be embarrassed and devastated.

We find the cases defendant relies upon in support of his argument, that Kurczaba's prominence or stature in the community is insufficient to create a special relationship, are distinguishable. In *McSurely v. McLellan*, 753 F.3d 88 (D.C. Cir. 1985) (*per curiam*), the offensive disclosure was to a husband. The plaintiff husband and wife were field organizers for a civil rights organization and county authorities seized extensive personal papers from their home. These papers included letters to the wife from former lovers as well as her personal diary. When the papers were returned to the plaintiffs, the seizing agent "forced" the husband to read each document, thereby disclosing to him for the first time the details of his wife's affairs prior to their relationship. *McSurely*, 753 F.2d at 93-94. The court found this disclosure sufficient to sustain a cause of action for false light invasion of privacy. The court did not discuss the plaintiffs' stature in the community or prominence, if any, nor did it discuss the publicity element other than to cite to comment *a* of section 652D of the Restatement (Second) of Torts and *Beaumont*. The court did state that, under Kentucky law, the size of the public was irrelevant. *McSurely*, 753 F.2d at 112. Accordingly, this case does not support defendant's publicity or stature contentions.

Similarly, in *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273 (N.D. Ill. 1996), a vice president of a company was allegedly placed in a false light to one "business associate." The court found this insufficient, stating that there were no allegations in the plaintiff's complaint of a special relationship between the two. *Chisholm*, 940 F. Supp. at 1285. Again, there was no discussion by the court of the plaintiff's alleged stature in the community, nor any relation of stature to satisfying the publicity or special relationship exception. Moreover, the disclosure was made to one individual, not many as in the instant case.

Based on the above, we conclude that Kurczaba pled sufficient facts with respect to falsity and publicity to withstand a motion to dismiss his false light invasion of privacy count. Accordingly, we find that the trial court erred in dismissing count III of plaintiffs' complaint.

## PRIVILEGES

Plaintiffs contend that none of the three privileges defendant

relies upon in support of his argument that he is protected from a claim of defamation—attorney litigation, dissemination of public records, or fair report on judicial proceedings—are available to him.

## ATTORNEY LITIGATION PRIVILEGE[2]

Plaintiffs contend that the attorney litigation privilege is not applicable because, notwithstanding that defendant disseminated the *Malus* complaint and ad while participating in ongoing judicial proceedings, his conduct was not a part of that judicial proceeding and was not related to the proceeding. Plaintiffs also contend that defendant did not disseminate a valid public record but rather manufactured a public record since defendant did not have leave of court to file the disseminated *Malus* complaint and, therefore, it was not an official court document.

Defendant contends that the privilege applies because all the statements were contained in pleadings filed with the court and the statements were made within and connected to a judicial proceeding.[3] Defendant argues that he was free to discuss the pleading and to disseminate a copy of the *Malus* complaint because the complaint was a part of the public record and a person is free to circulate what exists in the public record. According to defendant, it is irrelevant whether he was granted leave to file the complaint because once it was accepted by the circuit court, it became a part of the public record.

■ "An attorney is absolutely privileged to publish defamatory matter concerning another *** during the course and as a part of[ ] a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Thompson v. Frank*, 313 Ill. App. 3d 661, 664, 730 N.E.2d 143 (2000). See also Restatement (Second) of Torts § 586, at 247 (1977). The absolute privilege

> "provides a complete bar to a claim for defamation, regardless of the defendant's motive or the unreasonableness of his conduct. [Citation.] In light of the complete immunity provided by an absolute privilege, the classification of absolutely privileged communications is necessarily narrow. [Citation.]" *Thompson*, 313 Ill. App. 3d at 664.

The privilege is based upon the "public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure

---

[2]While the right to freely disseminate public records may or may not be a separate and viable privilege, the arguments of the parties in this case with respect to the attorney litigation privilege and the right to disseminate public records are so interrelated that we address the two together.

[3]Defendant ignores the fact that the ad, which was not a part of any judicial proceeding, was also disseminated.

justice for their clients." Restatement (Second) of Torts § 586, Comment *a*, at 247 (1977). The privilege does not cover, however, the publication of defamatory matter that has no connection whatsoever with the litigation. Restatement (Second) of Torts § 586, Comment *c*, at 248 (1977). The privilege is available only when the following conditions have been met: the publication "was made in a judicial proceeding; had some connection or logical relation to the action; was made to achieve the objects of the litigation; and involved litigants or other participants authorized by law." 53 C.J.S. *Libel & Slander* § 72, at 132 (1987).

We agree with defendant that, upon submission to the clerk of the court, a document becomes a part of the public record. We so find because we presume that documents are filed for legitimate purposes, not clandestine purposes, and, thus, should be accorded a proper status. We also so find because the court has authority and is able to control access to its records and files and, thus, is able to limit public access to files in such situations where access may be used as a "vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 55 L. Ed. 2d 570, 580, 98 S. Ct. 1306, 1312 (1978). We note that there is no case law on point. However, because a bright line rule is required to ascertain at what point a filing becomes a public record, we believe that a filing becomes a public record upon submission and acceptance by the clerk of the circuit court. However, this does not mean that an attorney is free to disseminate filings to anyone he or she wants to under the attorney litigation privilege. Instead, the proper procedures must first be followed to render the filing a *valid* court document and, thus, for it to become a part of a judicial proceeding. Second, any dissemination must fall within the class of individuals entitled to such information within the scope of the privilege. In this context, the class of individuals should be ascertained by reference to the public policies underlying the privilege.

Despite our conclusion that a document becomes part of the public record upon submission to the clerk of the court, an amended complaint is not a *valid* filing/court document and thus part of a judicial proceeding until leave to file has been granted by the court. A party has no absolute right to amend its pleadings. *First Robinson Savings & Loan v. Ledo Construction Co.*, 210 Ill. App. 3d 889, 892, 569 N.E.2d 304 (1991). Consequently, "[a] party must first seek and obtain the court's permission in order to file a proposed amendment." *In re Estate of Zander*, 242 Ill. App. 3d 774, 776, 611 N.E.2d 86 (1993). See also *First Robinson Savings & Loan*, 210 Ill. App. 3d at 892; *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.*, 82 Ill. App. 3d 18, 22, 401 N.E.2d 1049 (1980); *Reinhardt v. Security In-*

*surance Co.*, 287 Ill. App. 320, 322, 4 N.E.2d 883 (1936); *Walter Cabinet Co. v. Russell*, 250 Ill. 416, 419, 95 N.E. 462 (1911). Amendments that are filed without leave of court "are said to be a nullity which should be stricken." *Zander*, 242 Ill. App. 3d at 776; *First Robinson Savings & Loan*, 210 Ill. App. 3d at 892; *Ghosh v. Roy*, 208 Ill. App. 3d 30, 31, 566 N.E.2d 873 (1991); *Condell Hospital v. Health Facilities Planning Board*, 161 Ill. App. 3d 907, 935, 515 N.E.2d 750 (1987); *Allen v. Archer Daniels Midland Co.*, 129 Ill. App. 3d 783, 786, 473 N.E.2d 137 (1985); *Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962, 968, 447 N.E.2d 1358 (1983); *Peoples v. Peoples*, 96 Ill. App. 3d 94, 96, 420 N.E.2d 1072 (1981); *Reinhardt*, 287 Ill. App. at 322. Thus, while a filing is a part of the public record upon its submission and acceptance by the circuit court, it is not a part of a judicial proceeding, *e.g.*, a *valid* filing, until leave to file has been granted. While the attorney litigation privilege would protect an attorney at the time he or she files a proposed amended complaint *as part of* a motion for leave to file, the amended complaint is not yet a part of a judicial proceeding and has no legal effect until the motion is granted. Accordingly, the attorney litigation privilege does not attach to protect an attorney from disseminating an amended complaint alone.

█ In the instant case, defendant disseminated a copy of the *Malus* complaint for which leave to file had not yet been granted. Based on the above authority, the *Malus* complaint was thus a nullity. Moreover, defendant not only disseminated the *Malus* complaint, but also disseminated a copy of the ad, which clearly was not part of any judicial proceeding. Accordingly, we conclude that the attorney litigation privilege does not apply to the facts of the instant case because the publication of the disseminated complaint was not yet part of a judicial proceeding.

Assuming, *arguendo*, that defendant had a right to disseminate the *Malus* complaint with the ad, we nonetheless would find that the dissemination was also not protected by the attorney litigation privilege because the groups defendant disseminated the materials to extended beyond those covered by the privilege.

In *Thompson*, the plaintiff wife and the defendant husband were involved in a child custody lawsuit. The defendant's attorney (also a defendant) sent a letter to the plaintiff's new husband, stating that the plaintiff had slept with the defendant husband in hopes of compromising the dispute between the two. The letter also stated that the plaintiff was devious and dishonest. *Thompson*, 313 Ill. App. 3d at 662. The trial court dismissed the plaintiff's defamation lawsuit based on the absolute attorney litigation privilege. On appeal, we reversed,

first noting that Illinois courts have extended the privilege to cover out-of-court communications between opposing counsel, attorneys and their clients, and between attorneys representing different plaintiffs in lawsuits against the same defendant. *Thompson*, 313 Ill. App. 3d at 664. We noted, however, that Illinois has never extended the privilege to cover out-of-court communications to other persons. In declining to extend the privilege in *Thompson*, the court stated:

"Defendants cite no authority for extending the privilege to out-of-court communications between an attorney and an opposing party's spouse. Moreover, in view of the narrow application of the privilege, we find no compelling reason to extend the privilege to the circumstances of the case *sub judice*." *Thompson*, 313 Ill. App. 3d at 664.

In *Lykowski*, the plaintiff was a candidate for judge and the defendant was chairman of a political party committee. The defendant sent a letter to the Attorney Registration and Disciplinary Commission (ARDC) alleging unethical acts and improper conduct on the part of the plaintiff. The letter was then "leaked" to a newspaper and the plaintiff's employer, the State's Attorney's office. *Lykowski*, 299 Ill. App. 3d at 160. The appellate court agreed with the trial court that the defendant was absolutely privileged to make the defamatory statements to the ARDC as part of a judicial proceeding. *Lykowski*, 299 Ill. App. 3d at 165. However, we did not agree that the defendant had a privilege to defame the plaintiff to third persons such as the media and the State's Attorney's office. *Lykowski*, 299 Ill. App. 3d at 166.

In *Golden*, the defendant, an attorney who had opposed the plaintiff in a recent case, wrote two letters to the defendant's client following conclusion of the lawsuit between the defendant and the plaintiff. One of the letters was also addressed to the client's wife. In the letters, the defendant made defamatory remarks about the plaintiff. *Golden v. Mullen*, 295 Ill. App. 3d 865, 868 (1997). The trial court dismissed the plaintiff's defamation lawsuit based on the absolute attorney litigation privilege. *Golden*, 295 Ill. App. 3d at 869. We agreed with the trial court that the defendant had an absolute privilege with respect to the letter he sent to his client because this was an extension of the attorney's obligations to his client to explain what occurred in the lawsuit, why it had occurred, and any ramifications. *Golden*, 295 Ill. App. 3d at 871. However, we refused to extend the privilege to the letter addressed to the client's wife. Because the privilege is absolute, the classifications of communications which fall therein are necessarily narrow. *Golden*, 295 Ill. App. 3d at 872. Accordingly, we held that "[w]e are reluctant to expand the privilege to cover communications made by an attorney to persons other than the clients he or she represented." *Golden*, 295 Ill. App. 3d at 872.

From the above cases, it is evident that Illinois clearly limits the attorney litigation privilege and has refused to extend it to third-party communications unrelated to a lawsuit. The individuals that the documents were forwarded to in *Thompson* and *Golden,* and even the employer in *Lykowski,* would appear to have a greater connection to the proceedings in those cases than the individuals and entities defendant here disseminated the *Malus* complaint and ad to, yet those courts found no privilege. As in *Thompson, Golden,* and *Lykowski,* because the privilege is narrow, we decline to extend it to defendant's dissemination of the *Malus* complaint and ad. Defendant disseminated the materials to third persons who had no connection whatsoever to the *Malus* action other than the fact that the individuals and entities were part of the Polish community and may have been interested in immigration and other Polish-related matters. These individuals clearly were not litigants in the *Malus* action, were not other participants authorized by law, and had no connection to the *Malus* action.

Lastly, the policy reasons and rationale underlying the attorney litigation privilege support a conclusion that the privilege should not be extended to the facts of the instant case. The privilege is based on English doctrine and the basis for the privilege is:

"[I]t is [in] the interest of the public that great freedom should be allowed in complaints and allegations with a view to have them inquired into; and that parties and counsel should be indulged with great latitude in the freedom of speech in the conduct of their causes and courts and in asserting their rights, because in this way the purposes of justice will be subserved, and the court can and will protect the party aggrieved by expunging irrelevant, defamatory matter from the pleadings, and by punishing for contempt of court the guilty party." *Pledger v. Burnup & Sims, Inc.,* 432 So. 2d 1323, 1326 (Fla. App. 1983).

Thus, the privilege is allowed to protect zealous advocacy. *Kennedy v. Zimmermann,* 601 N.W.2d 61, 64 (Iowa 1999). The privilege does not cover situations "for which there are no safeguards against abuse." *Demopolis v. Peoples National Bank,* 59 Wash. App. 105, 112, 796 P.2d 426, 430 (1990). "[A]n absolute privilege is allowed only in 'situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct.' [Citation.]" *Demopolis,* 59 Wash. App. at 112, 796 P.2d at 430. Conversely, "[w]hen the occasion giving rise to a communication by a lawyer is not connected to a judicial proceeding, the need for unbridled advocacy is diminished, and the need to protect the intrusion upon a person's reputation is enhanced." *Kennedy,* 601 N.W.2d at

64. Thus, "[s]tatements made during an occasion outside a judicial proceeding are not covered." *Kennedy*, 601 N.W.2d at 64. The privilege, while broad in scope, is applied sparingly and confined to cases where the public service and administration of justice require immunity. *Demopolis*, 59 Wash. App. at 112, 796 P.2d at 430. Additionally, courts have required that the act to which the privilege applies must not only bear some relation to the judicial proceeding but must also be "in furtherance of that representation." *Samson Investment Co. v. Chevaillier*, 988 P.2d 327, 330 (Okla. 1999).

In the instant case, none of the rationales underlying the privilege are implicated. Defendant was not securing justice for his clients. Defendant did not disseminate the materials in an effort to achieve the objects of the litigation, nor were the materials disseminated in furtherance of defendant's representation of his clients. The recipients were not involved litigants nor other participants in the *Malus* action. Similarly, declining to extend the privilege to defendant would not inhibit him from fully investigating his claim, nor from fully and completely presenting his claim to the court. Likewise, defendant's dissemination was without close judicial control and, in fact, without any judicial control at all. In this case, the administration of justice is not promoted by allowing defendant to stand behind the attorney litigation privilege. The dissemination of the *Malus* complaint, which complaint was filed without leave of court, with the attached ad, to individuals not parties to the action, who had no participation in the action, and who had no legal interest in the action, simply does not fall within the rationale supporting the privilege. As the court stated in *Pledger*:

> "For why should a person be absolutely privileged to defame another in the course of a judicial proceeding by making slanderous statements wholly outside of the inquiry before the court? We think it is unnecessary to carry the doctrine so far." *Pledger*, 432 So. 2d at 1326.

Based on the foregoing, we conclude that the attorney litigation privilege is not applicable to defendant's out-of-court dissemination of the *Malus* complaint and ad to third parties not involved in the *Malus* action.

## FAIR REPORT ON JUDICIAL PROCEEDINGS PRIVILEGE

Plaintiffs contend that the fair report on judicial proceedings is a limited privilege and not applicable to this case. According to plaintiffs, defendant cannot confer this privilege upon himself because he himself made the original defamatory publication and then "reported" on it. Plaintiffs further argue that defendant's conduct did not amount to reporting and, even if it did, it was not done based upon judicial

proceedings and the defamatory material was not found exclusively within judicial proceedings. Likewise, defendant's "report" of the *Malus* action was not a fair report. Plaintiffs also argue that the policy underlying the privilege is not implicated because defendant did not report facts, nor was the material an accurate, complete, and fair summary.

Defendant contends that this privilege, contrary to what plaintiffs state, is not confined to members of the press.[4] Defendant argues that he is protected by the privilege because he merely disseminated documents that any member of the public could have acquired. Defendant also maintains that plaintiffs' argument that he abused the privilege "borders on ridiculous." According to defendant, the allegations of the complaint accurately reported the content of a proceeding, and he did not put any "spin" on, or "overstate," them.

■ Section 611 of the Restatement (Second) of Torts sets forth the fair report of judicial proceedings privilege. It states:

"The publication of defamatory matter concerning another in a report of an official action or proceeding *** is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." Restatement (Second) of Torts § 611, at 297 (1977).

See also 53 C.J.S. *Libel & Slander* § 99, at 175 (1987). Our supreme court has adopted section 611. See *Tepper v. Copley Press, Inc.*, 308 Ill. App. 3d 713, 717, 721 N.E.2d 669 (1999). The basis for this privilege is the public's interest in having information made available to it as to what occurs in official proceedings. Restatement (Second) of Torts § 611, Comment *a*, at 297 (1977). This privilege is a qualified privilege (53 C.J.S. *Libel & Slander* § 99, at 175 (1987)) and is commonly exercised by newspapers, broadcasting stations, and others in the business of reporting news to the public. Restatement (Second) of Torts § 611, Comment *c*, at 299 (1977). However, the privilege is not limited to the media.

Additionally, the publication must "contain only that which happened in the due course of the proceeding, and any matter added *** is not privileged." 53 C.J.S. *Libel & Slander* § 99, at 175 (1987). "The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression." Restatement (Second) of Torts § 611, Comment *f*, at 300-01 (1977). The privilege can be lost if the report is inaccurate or unfair, where the "account is discolored or garbled," or where comments or insinuations are added.

---

[4]Plaintiffs did not make this statement. They conceded that the privilege is not limited to the press.

50 Am. Jur. 2d *Libel & Slander* § 318, at 628 (1995). See also Restatement (Second) of Torts § 611, Comment *a*, at 298 (1977).

 We conclude that the fair report on judicial proceedings privilege is not available to defendant here either. First, defendant seeks to confer the privilege upon himself. "A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not." Restatement (Second) of Torts § 611, Comment *c*, at 299 (1977). See also 50 Am. Jur. 2d *Libel & Slander* § 318, at 627-28 (1995). In the instant case, defendant made the original defamatory publication (the *Malus* complaint) and then "reported" the same matter to others. Based on this alone, the fair report of judicial proceedings privilege is not available to defendant.

We also find that defendant's conduct does not fall within the "fair abridgement" portion of the privilege. Defendant's communication was clearly not an abridgement of the proceedings or even of the *Malus* complaint. Defendant's conduct is much like the defendant's conduct in *Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 297 Ill. App. 3d 304, 696 N.E.2d 761 (1998). In *Snitowsky*, the defendant did not simply abridge statements made to the police which the defendant then reported to the public but added evidence that was not found in the police report. In the instant case, defendant, too, added to the *Malus* complaint, which itself is not even a valid part of a judicial proceeding. Defendant added a copy of the ad. While defendant argues that he did not place any "spin" on his report, the addition of the ad was clearly meant to convey something. Moreover, because the defamatory material was not solely contained in the public records or proceedings, the privilege of fair and accurate reporting on public records does not apply to defendant's defamatory statements in the *Malus* complaint about plaintiffs. See *Berkos v. National Broadcasting Co.*, 161 Ill. App. 3d 476, 492, 515 N.E.2d 668 (1987).

Lastly, we find that defendant's dissemination of the complaint was not fair, accurate, and complete. While it is true that defendant circulated an accurate copy of the complaint he *desired* to file against the *Malus* defendants, defendant was not granted leave to file that complaint and all of the counts contained in the complaint which he disseminated. In fact, defendant was later only allowed to file two of the eight counts. Accordingly, defendant's dissemination of the complaint was not a complete and accurate "report" of the actual allegations and counts against the *Malus* defendants.

Based on the above, we find that the fair reporting privilege does not apply to the facts of the case at bar.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County on count II. We reverse the circuit court's judgment on counts I and III, and remand this cause for further proceedings on these counts consistent with the views expressed in this opinion.

Affirmed in part; reversed in part; and remanded.

CERDA and WOLFSON, JJ., concur.